## CRANE v WOOD MOTORS, INC.

1. EVIDENCE—PUBLICATIONS—HEARSAY.

A publication which listed the model year of airplanes was inadmissible as substantive evidence of the model year of an airplane in controversy because it was hearsay evidence.

2. DAMAGES—BURDEN OF PROOF.

A trial judge erred in awarding damages to plaintiffs where the plaintiffs failed to prove by a fair preponderance of the evidence any damages to which they were entitled.

3. DAMAGES—MEASURE OF DAMAGES—MISREPRESENTATION.

The measure of damages in an action for misrepresentation in the sale of an airplane is the difference between the value the airplane would have had if it had been as represented and its value as it was, less the value of the use of the airplane up to the time the misrepresentation was discovered.

Appeal from Wayne, Roland L. Olzark, J. Submitted Division 2 March 7, 1974, at Detroit. (Docket No. 16347.) Decided April 30, 1974.

Complaint by Leslie C. Crane and Myron E. Crane against Wood Motors, Inc., and Michigan Bank for damages resulting from breach of warranty in the sale of an airplane. Counterclaim by Michigan Bank for a deficiency of an unsatisfied loan balance. Third-party complaint by Wood Motors, against Bellanca Aircraft Corporation. Cross-

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence §§ 498, 834, 836.
Written recitals or statements as written rules excluding hearsay, 10 ALR2d 1037.

[2] 22 Am Jur 2d, Damages §§ 296–303.
Presumption and burden of proof regarding mitigation of damages, 134 ALR 243.

[3] 22 Am Jur 2d, Damages § 296.

complaint by Michigan Bank against Wood Motors, Inc., and Bellanca Aircraft Corporation for indemnification. Judgment for plaintiffs against Bellanca Aircraft Corporation, and for Michigan Bank against plaintiffs. Third-party defendant Bellanca Aircraft Corporation appeals. Reversed and remanded for new trial.

*Michael Kranson,* for plaintiffs.

*Travis, Warren, Nayer & Burgoyne* (by *George E. Ward),* for defendant Michigan Bank.

*Miller, Canfield, Paddock & Stone* (by *Gilbert E. Gove* and *Christopher J. Dunsky),* for third-party defendant Bellanca Aircraft Corporation.

Before: DANHOF, P. J., AND BRONSON and BOYLE,* JJ.

BOYLE, J. This case involves the sale of an airplane. On or about July 22, 1969, plaintiffs purchased a Bellanca Aircraft Model 17 30, Serial No. 30134, for $32,593.20 from defendant Wood Motors, Inc., paying a cash deposit of $3,593.20; the balance of $29,000 was financed through Michigan Bank for a four-year term with total payments of $36,540. This airplane was represented to be a 1969 model. Whether it was a 1969 model or a 1968 model is a crucial question in the case.

Leslie Crane, now residing in Colorado Springs, Colorado, was a former co-owner with his brother Myron E. Crane of the aircraft. In the spring of 1970 Myron Crane was moving to Phoenix, Arizona. This situation necessitated a new method of ownership for Leslie Crane by either refinancing it himself or finding a new partner. By this time, the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

airplane was 10 months old and had 300 hours of air time. He testified that he attempted to sell the aircraft beginning in March, 1970, and was unsuccessful.

On or about May 20, 1970, he called Michigan Bank Aircraft Finance Department for the purpose of inquiring into refinancing the aircraft and was told at this time he might have to put up some more equity since the aircraft was a 1968 model and the loan value was lower.

He testified that he had bought the aircraft with his brother from Don Wood, President of Wood Motors, Inc., who was in the business of selling aircraft; that at the time Wood told them he had a 1969 Bellanca in Lansing, Michigan, after the brothers Crane had looked over a 1968 Bellanca model.

The Lansing plane was brought to Detroit on July 22, 1969, and considering the price differential between the 1968 and 1969 model as being about $3,500, the Cranes purchased the 1969 model. The sales order stated no year.

After the refinancing information from the bank, Leslie Crane made inquiries of both Wood and Bellanca at which time he was assured that it was a 1969 model and not a 1968 model as he had just recently been informed by Michigan Bank. He consulted the Used Aircraft Pricing Digest, which is somewhat comparable to the motor vehicle Blue Book, and found that the digest listed the value of this particular airplane and by its serial number 30134 as a 1968 model.

On June 16, 1970, the Cranes filed suit against defendant Wood Motors, Inc., and Michigan Bank in Common Pleas Court in Detroit on the basis of the serial number and 1968 model year as listed in the price digest.

On July 20, 1970, plaintiff Leslie Crane wrote letters to Wood Motor Inc., and Michigan Bank informing them that no further payments would be made on the loan and told them where the aircraft was being stored, giving as his reason that it would be impossible to keep, sell, operate, or even insure the aircraft. On July 22, apparently on a verbal promise to plaintiff Leslie Crane to do so, which promise was made prior to his letter of July 20, 1970, Bellanca Aircraft sent a notice to the publishers of the Used Aircraft Pricing Digest for the digest to change the listing of aircraft number 30134 from a 1968 model to a 1969 model for the next 1970 edition of the digest, which new listing was effected.

Beginning about March 10, 1970, Crane had attempted to refinance and sell the plane but was unable to find a buyer. He was not aware of any discrepancy as to what model year the plane was listed in the Used Aircraft Pricing Digest until he contacted Michigan Bank about refinancing on May 20, 1970. He testified that the price digest listing had no effect on his efforts to sell the aircraft between March 10 and May 20 of 1970. The lawsuit that plaintiff began in Common Pleas on June 16, 1970, was thereafter removed to Wayne County Circuit Court where Michigan Bank filed a counterclaim for a deficiency for unsatisfied loan balance on the aircraft; thereafter defendant Wood Motors filed a third-party complaint against Bellanca Aircraft Corporation, which company had moved the aircraft. Michigan Bank then filed a cross-complaint against co-defendant Wood Motors, Inc., and Bellanca Aircraft to obtain indemnification for any loss that it might have sustained based upon their actions with respect to the representations of the model year of the aircraft.

Michigan Bank was given a judgment against plaintiffs Crane on the counterclaim for $6,947.64 plus interest. The plaintiffs Crane then received a judgment against defendant Bellanca in the same sum, that is, $6,947.64 as damages for representing to the plaintiffs Crane that they purchased a 1969 model aircraft when the trial court found as the ultimate fact that it was a 1968 model. The trial court found that there was no proof as to any misrepresentation by Wood Motors and in any event Wood Motors would be entitled to indemnification from Bellanca. The result of the claims and counterclaims is that defendant Bellanca was the party against whom the damages in the amount of $6,947.64 was ultimately assessed.

Bellanca appealed alleging: (1) That the trial court erroneously based his decision on the crucial question in the case, that is whether the aircraft was a 1968 or 1969, upon hearsay evidence;

(2) That the plaintiffs Crane failed to introduce any relevant and probative evidence on the sole issue in the lawsuit; and

(3) That the purchasers of the aircraft had retained and used the aircraft for approximately ten months and had flown it some 300 hours and that said aircraft was thereafter sold under the same description as at the time of purchase, that is as a 1969 aircraft; and that plaintiffs failed as a matter of law to establish damages arising from any alleged misdescription and that the trial court was in error in awarding any such damages, which damages were incorrectly determined and assessed by the trial court.

Our review of the record in this case convinces us that the trial judge was persuaded that the price digest should be considered by him as an important element in arriving at his decision. He

pointed out erroneously how many additional planes had been built by Bellanca after the one in question had been taken out of 1968 assembly sequence to make it a 1969 model with an Auto-Axtion automatic gear extension feature. We do not consider this latter aspect essential to our decision. He also went on to say that although there might have been a mistake in forwarding the information with respect to the year of the model in question to the price digest company the implication was that it should be borne by the defendant because it was not the fault of the plaintiff.

This is contrary to his earlier ruling that the books relating to the price of the airplane were only admitted at the outset for purposes of credibility and not substantive proof of the year. However, it appears that at the conclusion of the trial he used these books as substantive evidence of potential damages based on the premise that inasmuch as it was listed in the price book at one time as a 1968 model that such was a cause for damages. We conclude that he based at least part of his decision on hearsay evidence, which the price books were. We do not find from the record that defendant permitted such books to go into evidence on the substantive side without objection, as plaintiffs contend.

While the price book or digest could be used as evidence of price, unique activity, or credibility, such publication was inadmissible as substantive evidence of the model year since it is hearsay. The price book or digest is an out-of-court statement by the publisher introduced by plaintiffs and was apparently used by the trial court not merely as to credibility of Bellanca but to establish the truth of the matter, *i.e.*, that this was a 1968 aircraft.

There was nothing introduced in this case that would take this evidence out of its character as hearsay.

The trial court did not clearly set forth upon what evidence he based his decision beyond the fact that the aircraft was once listed as a 1968 model. Our close examination of the record and testimony in this case leads us to the conclusion that the plaintiff failed to establish by a preponderance of evidence that the airplane in question was a 1968 model instead of a 1969 model. We note that the Michigan Bank sold this plane as a 1969 model and could not have been misled as to what year model it was. We further note that on the front flap of the price book the following appears:

"All data contained in this aircraft price digest is based upon information *believed* to be authentic. However, Aircraft Appraisal Association of America, Inc., does not assume responsibility for its accuracy. The prices are estimates only and are not an offer to buy or sell." (Emphasis supplied.)

Any reliability (to which apparently the trial judge attached strong significance) was materially vitiated as to the proof of the model year when in the later edition the publishers retracted the earlier listing and republished aircraft number 30134 as a 1969 model.

Even if it were conceded that the aircraft was a 1968 model instead of a 1969 model--and this Court concludes from all the evidence that it was actually a 1969 model—the plaintiffs failed to prove by a fair preponderance of the evidence any damages to which they were entitled. The trial judge erred in the manner in which he calculated the damages he awarded plaintiffs. We note that

the trial judge awarded to plaintiff damages in the amount of $6,947.64, which is identical to the deficiency judgment obtained by Michigan Bank against plaintiffs.

It is difficult to determine how the lower court arrived at such damages unless it be assumed that he felt that inasmuch as there was a deficiency after the mortgage sale that it had to be the defendant Bellanca Aircraft Corporation who was responsible for it because of misrepresenting a 1968 plane as a 1969 plane. The plaintiffs had retained and used the aircraft for about 10 months and had flown it some 300 hours without complaint and thereafter surrendered it to the Michigan Bank as mortgagee who sold it at auction as a 1969 aircraft. The plaintiffs were not entitled to have had such aircraft without bearing the proper cost and expense. By his decision the trial court, in effect, "rescinded" the contract by putting the plaintiffs in the position of owing nothing.

We find that the contention of the plaintiffs and Michigan Bank as to the amount of the first year's depreciation on the airplane being close to the measure of damages awarded by the trial judge is without merit. The measure of damages is the difference between a new 1968 aircraft or a new 1969 aircraft less depreciation for the use up to the time of the discovery of the aircraft misrepresentation—if such misrepresentation occurred. Proceeding further, the measure of damages, considering the basis rule, would be market value where a fair price is obtained between a willing buyer and a willing seller at the highest price at voluntary sale.

Even if the contention of the plaintiffs were correct, which is that a 1968 plane was represented as a 1969 aircraft, such would create an

express warranty, MCLA 440.2313; MSA 19.2313. The measure of damages would then be calculated by MCLA 440.2714(2); MSA 19.2714(2):

"The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have if they had been as warranted, unless special circumstances show proximate damages of a different amount."

We are aware of no special circumstances showing proximate damages of a different amount. We note in passing that even the price book apparently relied upon by the trial court reflects that the auction price was a substantial price difference between a used 1968 and a 1969 or a new 1968 or 1969 than what the trial court awarded as damages.

We conclude that the trial court made his findings of fact by erroneously relying upon the price digest which was hearsay in character and by his calculation and award of damages. Accordingly, GCR 1963 517.1 is applicable to these findings.

Reversed and remanded for a new trial. Costs to appellant.

All concurred.