LEAVITT v MONACO COACH CORPORATION

Docket No. 213020. Submitted November 2, 1999, at Grand Rapids. Decided May 26, 2000, at 9:10 A.M.

A. S. Leavitt brought an action in the Ottawa Circuit Court against Monaco Coach Corporation, alleging breach of implied warranty of fitness for a particular purpose concerning the engine and brakes of a motor coach made by the defendant and bought by the plaintiff. The court, Calvin L. Bosman, J., entered judgment on a jury verdict awarding damages to the plaintiff. The court also awarded to the plaintiff mediation sanctions under MCR 2.403(O) and attorney fees under the Magnuson-Moss Act, 15 USC 2301 *et seq.* The defendant appealed. The plaintiff cross appealed, arguing that the trial court erred in denying double recovery of attorney fees under the mediation court rule and the Magnuson-Moss Act. In his cross appeal the plaintiff also sought an award of appellate attorney fees under the Magnuson-Moss Act.

The Court of Appeals *held*:

1. The trial court did not err in denying the defendant's motion for a directed verdict in light of evidence that created genuine issues of material fact concerning whether the defendant knew of the plaintiff's particular need for a coach with sufficient power and brakes for mountain driving and whether the defendant knew that the plaintiff was relying on the defendant's expertise in selecting a suitable coach.

2. The trial court did not abuse its discretion in allowing the Holland Motor Homes sales representative who sold the coach to the plaintiff to testify about the depreciated value of the plaintiff's coach. The trial court had discretion to admit the testimony of this witness regardless of whether the witness was identified as an expert during discovery. The trial court's characterization of the relationship between the witness and the defendant as a business relationship did not contravene a disclaimer of any agency relationship between the defendant and Holland Motor Homes, as provided in the contract of sale. The witness' testimony about the depreciated wholesale and retail values of the plaintiff's motor coach was not complicated and served as a reasonable alternative to the values stated in a standard industry publication.

3. The trial court did not err in instructing the jury to measure damages as the difference between the value of the coach as warranted and the value of the coach at the time that the plaintiff reasonably should have concluded that the defendant would be unable to repair the coach. Depreciation was a reasonable measure of the plaintiff's damages.

4. The trial court did not err in not instructing the jury to separately consider the engine and the brakes when determining the cause of the breach of warranty and damages. The defendant failed to timely request such an instruction, and the plaintiff made no attempt to draw distinctions between the engine and the brakes in terms of the breach of warranty and damages.

5. The jury's award of damages did not constitute an improper compromise verdict. Although the amount of the award could be arrived at by subtracting the average of the coach's depreciated value as proposed by the plaintiff's witness and as indicated in the industry publication from the purchase price, the award was not contrary to the jury's findings or the evidence.

6. The trial court did not abuse its discretion in denying the defendant's motion for remittitur. The jury's award was supported by the evidence.

7. The trial court did not abuse its discretion in awarding attorney fees to the plaintiff under the Magnuson-Moss Act. Although the act permits a warrantor to, as the defendant did in this case, disclaim liability for consequential damages for breach of written or implied warranty, 15 USC 2304(a)(3), Congress did not intend that its allowance of attorney fees under the act, 15 USC 2310(d)(2), be limited by a contractual bar of incidental and consequential damages simply because attorney fees may sometimes be recoverable as incidental or consequential damages under state law.

8. The matter must be remanded for a determination of an award of appellate attorney fees to the plaintiff. The Magnuson-Moss Act authorizes recovery of attorney fees by a consumer who finally prevails in a cause of action under the act. Where a defendant has chosen to appeal, the plaintiff has not achieved finality until the plaintiff has prevailed on appeal.

Affirmed but remanded for a determination of the plaintiff's appellate attorney fees.

1. SALES — IMPLIED WARRANTY — FITNESS FOR A PARTICULAR PURPOSE.

A warranty of fitness for a particular purpose is implied in a sale of goods where the seller has reason to know at the time of the sale the particular purpose for which the goods are required and that

the buyer is relying on the seller's skill or judgment to select or furnish suitable goods (MCL 440.2315; MSA 19.2315).

2. DAMAGES — SALES — BREACH OF WARRANTY.

Damages for breach of warranty is measured as the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different sort (MCL 440.2714[2]; MSA 19.2714[2]).

3. JURY — COMPROMISE VERDICTS.

A jury verdict that splits the difference between two proposed amounts constitutes an improper compromise verdict only when it is contrary to the jury's findings and the evidence.

4. CONSUMER PROTECTION — MAGNUSON-MOSS ACT — ATTORNEY FEES.

A warrantor's disclaimer of liability for consequential damages for breach of written or express warranty does not preclude an award of attorney fees under the Magnuson-Moss Act (15 USC 2304[a][3], 2310[d][2]).

5. CONSUMER PROTECTION — MAGNUSON-MOSS ACT — APPELLATE ATTORNEY FEES.

The provision of the Magnuson-Moss Act authorizing an award of attorney fees to a consumer who prevails in a cause of action under the act authorizes an award of appellate attorney fees incurred by a consumer who prevails after an appeal by the defendant (15 USC 2310[d][2]).

*Law, Weathers & Richardson, P.C.* (by *Anthony P. Gauthier*), for the plaintiff.

*Dykema Gossett PLLC* (by *John A. Ferroli* and *Scott D. Broekstra*), for the defendant.

Before: WHITE, P.J., and WILDER and METER, JJ.

METER, J. In this breach of warranty case, defendant appeals as of right, and plaintiff cross appeals, from an order of the trial court effectuating the jury's verdict and award of damages and awarding plaintiff legal fees both as mediation sanctions and as compensation under the Magnuson-Moss Warranty-Federal Trade Commission Improvement Act, 15 USC

2301 *et seq.* We affirm but remand for a determination and award of plaintiff's appellate attorney fees.

In 1991, plaintiff purchased a 1992 Monaco Dynasty motor coach, with an engine upgraded to 230 horsepower. Plaintiff presented evidence that while shopping for his coach, he informed defendant of his plans to use the coach extensively for travel in mountainous areas and of his wish to avoid problems he had experienced with rented vehicles that lacked sufficient engine and braking power. Almost immediately upon receiving the vehicle, and for the years leading up to this lawsuit, plaintiff complained that his coach could not maintain ordinary highway speeds going up steep hills and that the brakes were prone to overheating while going down. Defendant performed many warranty repairs and other service, but plaintiff ultimately concluded that the engine and brakes, as a matter of design, simply were not suitable for his expressed needs, and he commenced this action.

When trial began in September 1997, plaintiff sought damages under the Uniform Commercial Code (UCC), MCL 440.1101 *et seq.*; MSA 19.1101 *et seq.*, mediation sanctions under MCR 2.403(O), and attorney fees under the Magnuson-Moss Act. Plaintiff alleged inadequate performance from only the engine and brakes. Plaintiff initially named several defendants and stated several claims, but by the time trial began the only remaining defendant was Monaco Coach Corporation, and the only claim that went to the jury was the allegation that Monaco had breached an implied warranty of fitness for a particular purpose. The jury returned a verdict in favor of plaintiff in the amount of $33,730.50.

At a posttrial hearing, plaintiff petitioned for mediation sanctions and Magnuson-Moss attorney fees. The trial court awarded both, tailoring the award to cover plaintiff's legal expenses attendant to litigation with defendant only, as opposed to others who had been involved in the case, and to exclude fees attendant to developing the issue of consequential damages (the court having earlier ruled that incidental or consequential damages were not available under the terms of the warranty). The court also took care to avoid any duplication of legal fees under both the mediation rules and the Magnuson-Moss Act.

On appeal, defendant argues that plaintiff failed to create a jury-submissible question concerning breach of warranty, that the trial court improperly admitted evidence and improperly instructed the jury concerning damages, that the court accepted an improper compromise verdict, and, alternatively, that the court should have granted defendant's motion for remittitur. Defendant also argues that the court erred in awarding attorney fees under the Magnuson-Moss Act. Plaintiff argues that the trial court erred in denying double recovery of attorney fees under the mediation rules and Magnuson-Moss, and further asks this Court to award appellate attorney fees under the latter.

I

DIRECTED VERDICT

In reviewing a decision on a motion for a directed verdict, this Court views the evidence in the light most favorable to the nonmoving party to determine whether there existed a factual question about which reasonable minds could differ. *Oakland Hills Develop-*

*ment Corp v Lueders Drainage Dist*, 212 Mich App 284, 289; 537 NW2d 258 (1995).

MCL 440.2315; MSA 19.2315, a provision of the UCC, provides as follows:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose.

Thus, to establish a valid warranty of fitness for a particular purpose, "the seller must know, at the time of sale, the particular purpose for which the goods are required and also that the buyer is relying on the seller to select or furnish suitable goods." *Ambassador Steel Co v Ewald Steel Co*, 33 Mich App 495, 501; 190 NW2d 275 (1971).

In this case, plaintiff testified that in order to avoid risky situations such as he had experienced before, he described to defendant's sales manager his concerns for maintaining speed and having reliable brakes while traversing mountain roads, including those east of the Sierras, at Death Valley, through the Cascades, and through Mexico. Plaintiff further testified that he told the sales manager that he desired a vehicle that, while fully loaded and towing a fully loaded car, would keep up with commercial buses. According to plaintiff, the sales manager assured him that he would have no problem with the coach's engine and that the standard brakes would be fine with no supplementation.

Plaintiff also testified that (1) he explained to the sales manager that he had had no experience with

diesel engines, and (2) defendant's representatives were instrumental in convincing him that he should obtain one.

Defendant argues that plaintiff did not explain his special needs for engine power with sufficient particularity to establish a warranty of fitness for a particular purpose. Defendant points out that the evidence indicates that plaintiff never negotiated for specific speed capabilities and that the coach in question could, in fact, negotiate the steepest mountain grades while fully loaded, albeit at slow speeds. However, the evidence that plaintiff communicated his wish to traverse mountain roads while keeping up with commercial buses was sufficiently specific to support a finding that plaintiff articulated to defendant his particular need for engine power. Likewise, plaintiff's testimony about having communicated his problems with brakes in the past while seeking defendant's advice in the matter, along with having described the mountainous areas in which he wished to drive the coach, was sufficient to support a finding that plaintiff articulated to defendant his particular braking needs.

Concerning plaintiff's reliance on defendant in selecting the coach for his special needs, defendant points to evidence that suggests that plaintiff relied primarily on his own judgment, not defendant's, in the matter. However, plaintiff's insistence that he relied mainly on defendant for the choice of engine, and for deciding against upgrading the brakes, is sufficient to support a finding that plaintiff relied on defendant's expertise in selecting a coach that suited his needs.

Because the evidence created genuine issues of material fact concerning whether defendant knew of

plaintiff's particular needs and whether defendant knew that plaintiff was relying on defendant's expertise in making his selection, the trial court properly denied defendant's motion for a directed verdict.

II

DAMAGES

With regard to damages, defendant argues that the trial court erred in admitting certain testimony, in instructing the jury regarding the measure of damages, and in failing to direct the jury to differentiate between the engine and brakes as sources for any breach of warranty. We disagree.

A

Defendant objected to plaintiff's plan to have the sales representative who, operating as an employee of Holland Motor Homes, sold the coach to plaintiff testify concerning the value of the coach. Defendant conceded having had notice that this witness might appear in a lay capacity, but characterized the testimony concerning damages as "expert" and argued that this witness was not listed in discovery as an expert. The trial court ruled that because the witness "is an agent and has been all through the nature of these proceedings, and . . . was instrumental in the sale of this vehicle, an agent of the defendant, I'm going to permit him to testify as to damages." The court did not indicate whether it regarded such testimony to be expert testimony, and when the witness appeared, there was no discussion concerning whether he did so with the formal status of an expert.

It remains within a trial court's sound discretion to admit testimony from a witness even where the witness was not identified in the discovery process. See, e.g., *Herrera v Levine*, 176 Mich App 350, 355; 439 NW2d 378 (1989), and *Pollum v Borman's, Inc*, 149 Mich App 57, 61; 385 NW2d 724 (1986).

> [A]n abuse of discretion will be found when the decision is "so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." [*Dacon v Transue*, 441 Mich 315, 329; 490 NW2d 369 (1992), quoting *Spalding v Spalding*, 355 Mich 382, 384-385; 94 NW2d 810 (1959).]

Defendant argues that because the trial court had dismissed Holland Motor Homes from this case on the ground that Holland was not defendant's agent, the court erred in allowing Holland's salesperson to testify on the ground that that witness was in fact defendant's agent. However, defendant did not raise that ground for objection below, thus waiving it for purposes of appeal. MRE 103(a)(1); *Kubisz v Cadillac Gage Textron, Inc*, 236 Mich App 629, 637; 601 NW2d 160 (1999). In any event, this argument fails on its merits.

Although the sales contract for the coach disclaims any agency relationship between defendant and Holland Motor Homes, the trial court, for purposes of considering the witness' availability to defendant for deposition or other pretrial inquiries, was obviously using the word "agent" in the sense of "business partner," referring in this instance to the sales manager of a dealership authorized to sell defendant's products. The contractual disclaimer does not repudiate the

trial court's observations that a business relationship existed between Holland's salesperson and defendant and that the salesperson had been "all through the nature of these proceedings." Thus the trial court evidenced no perversity of will or defiance of judgment in allowing the witness to testify regarding the subject of damages.

Nor did the trial court err in allowing the jury to consider Holland's salesperson's formulae in assessing the value of the coach. The witness testified that, for retail purposes, a motor coach such as the one at issue would normally depreciate by about ten percent a year for the first three years and by about five percent for each year thereafter. The witness further testified that for wholesale purposes, depreciation was normally twenty percent for the first year, ten percent for the next two years, then five percent for each year thereafter. The salesperson also presented figures from a standard industry publication indicating that in June 1995 the retail value of plaintiff's coach was $101,580 and that its wholesale value was $80,410. However, the salesperson indicated that he himself would not use those figures because the book normally provided inflated figures.

Defendant characterizes the salesperson's figures as "complicated" and argues that they should have been excluded in preference to the standard industry reference book. However, our review of the testimony persuades us that the witness' figures were not especially complicated and did in fact represent a reasonable alternative to simple reliance on a standard reference book. The court did not abuse its discretion in allowing the jury to consider the salesperson's testimony concerning the value of plaintiff's coach or in

accepting a verdict that may have been influenced by that testimony.

B

Concerning the measure of damages, subsection 2714(2) of the UCC, MCL 440.2714(2); MSA 19.2714(2), provides that "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."

In this case, the trial court concluded such special circumstances existed, and the court instructed the jury that the measure of damages was the difference between the value of the coach as warranted and the value of the coach at the time that plaintiff reasonably should have concluded that defendant would be unable to repair the coach. The court reasoned that the evidence was sufficient to support the conclusion that it was reasonably within the contemplation of the parties that if the coach could not be made suitable for mountain travel, "damages measured as the difference at the time and place of acceptance between the value of the coach as accepted and the value of the coach as warranted would be inadequate to fully and fairly compensate plaintiff for his loss." The court listed the special circumstances justifying its departure from the standard measure of damages as

> plaintiff's intended use of the coach, defendant's failure to repair the coach to make it safe for such use, and, most importantly, defendant's knowledge, prior to the sale, that,

due to the design limitations of the engine and the brakes, the coach could not be made safe for such use.

Defendant argues that the trial court's alternative measure of damages caused defendant to bear the expense of ordinary depreciation of the coach for the several years, and 30,000 miles, that plaintiff used it, and that this was unrelated to any actual damages that plaintiff may have suffered.

" 'Where there is more than one method of estimating damages, . . . that one should be chosen which best achieves the fundamental purpose of compensation to the injured person . . . .' " *Big Rock Mountain Corp v Stearns-Roger Corp*, 388 F2d 165, 170 (CA 8, 1968) (concerning breach of a warranty of fitness), quoting 25 CJS Damages § 72 (1966). Damages should not be measured as an approximation of depreciation unless depreciation in fact reasonably reflects the actual damages. *Crane v Wood Motors, Inc*, 53 Mich App 17, 24; 218 NW2d 420 (1974).

In this case, we conclude that the trial court properly viewed depreciation as an indicator of plaintiff's damages. The jury was free to conclude that defendant unreasonably prolonged the period during which plaintiff struggled with his unsatisfactory vehicle—to the degree that revocation of acceptance was not practical, and that the logical way for plaintiff to attempt to obtain a coach that suited his needs would be to obtain what value he could from his present one in order to reinvest it in a new one. Thus, depreciation—gauging the decline of trade-in or resale value of the unsuitable coach while plaintiff relied on defendant's unreasonable protestations that it could be made suitable—was a reasonable measure of plaintiff's damages.

Defendant argues that although plaintiff may have been frustrated by the coach's limitations, he nonetheless derived some normal use and enjoyment from it even while he endeavored to have it made suitable for mountain roads. Defendant thus suggests that where depreciation is to be the measure of damages, the jury should be instructed that its award of damages should be mitigated by the value of the plaintiff's use and enjoyment during the period in question. Although this is a sound principle,[1] we can find no indication in the record that defendant raised it before the trial court. "In order to preserve for appellate review the adequacy of jury instructions in a civil case, a party must make a request for a jury instruction before the instructions are given and must object to the alleged error after the jury has been instructed." *Zinchook v Turkewycz*, 128 Mich App 513, 520; 340 NW2d 844 (1983). Because defendant failed to request the mitigating jury instruction at trial, defendant waived the issue, both at trial and on appeal.

Defendant further points out that the alleged deficiencies concerned both the engine and the brakes. Defendant argues that the special circumstances cited by the court did not implicate the brakes because plaintiff never brought the coach to defendant for brake repair and defendant never led plaintiff to believe that the brakes needed such attention. Thus, defendant argues that the trial court's substitute mea-

---

[1] See *Crane, supra* at 24 (noting that a trial court's award of damages in the amount of a deficiency judgment obtained by a mortgagor was improper where the plaintiffs, who retained and used an aircraft for ten months and then surrendered it to the mortgagor, "were not entitled to have had such aircraft without bearing the proper cost and expense").

sure of damages could not relate to any supposed deficiency in the brakes. However, although there is no evidence that service to the brakes constituted part of any unjustified prolongation of plaintiff's hopes by defendant, plaintiff testified that "there were people from Monaco" who told him that installation of supplemental braking equipment "would work" while "other people from Monaco" told him "it wouldn't work." Therefore, the jury could reasonably have concluded that this alternating encouragement and discouragement to upgrade plaintiff's brakes implicated defendant in plaintiff's taking so long to conclude that his coach's brakes would never perform satisfactorily, and thus that the coach would never be suitable for mountain travel.

For these reasons, we find no error in the trial court's jury instructions concerning the measure of damages.

C

Defendant argues that if the brakes alone were determined to be the cause of the breach, actual damages would have been limited to the cost of installing a supplemental braking apparatus. Accordingly, defendant submits that the trial court's failure to instruct the jury to separate the brakes from the engine in determining damages made it impossible to ascertain both what the jury found to be the actual cause of the breach and whether its award of damages properly related to that finding.

Defendant cites a posttrial motion as the occasion on which this issue was raised, thus admitting that it

was not raised in timely manner at trial.[2] Thus, we deem the issue waived. *Zinchook, supra* at 520. Further, even on its merits, this argument must fail.

Sometimes a remand is necessary to ascertain how the jury apportioned damages even in the absence of a timely request at trial. See, e.g., *LaLone v Rashid*, 34 Mich App 193, 204; 191 NW2d 98 (1971) (reluctantly remanding for a new trial on the issue of damages because there were two bases for recovery, only one of which was subject to statutory trebling, and the general verdict provided no way to ascertain which fraction of the award was subject to that enhancement), and *Rock v Derrick*, 51 Mich App 704, 709; 216 NW2d 496 (1974) (remanding because the verdict covered several theories, one of which was not properly a jury question, rendering it impossible to ascertain if and to what extent the improper matter accounted for the jury's verdict). No such necessity is present in the instant case, where plaintiff charged that the vehicle was not fit for the specific purpose for which he purchased it, and where he made no attempt to quantify the damages attributable to each basis for the vehicle's unfitness. Further, although it would have been a peculiar or strained interpretation of the evidence to conclude that the engine was fully capable of fulfilling plaintiff's special needs and that only the brakes accounted for the failure of the warranty, even if the jury so concluded, it remained free to find that plaintiff reasonably concluded that the

---

[2] The record reveals that although defendant argued in its motion for a directed verdict that plaintiff suffered no damages with regard to the coach's brakes, having lost that motion, defendant never argued that damages relating to the brakes were otherwise limited or that the jury should be instructed to consider separately the claims relating to the engine and brakes.

contemplated supplemental brake, about which defendant refused to offer guarantees, could not have rendered the coach fit for plaintiff's stated purposes.

III

## COMPROMISE VERDICT

Defendant asserts that the jury's award of damages constituted an improper compromise verdict. We disagree.

A trial court has a duty to set aside verdicts that clearly reflect compromise among the jurors instead of unanimous judgment, *Kelly v Nat'l Casualty Co*, 10 Mich App 450, 452; 159 NW2d 363 (1968), citing *Buckner Loan Co v Bicher*, 221 Mich 198, 200; 190 NW 670 (1922). However, we reject the allegation that a compromise verdict resulted in this case. Defendant's claim stems entirely from defendant's observation that the figure that the jury awarded may be arrived at by averaging a figure that plaintiff proposed during closing argument as the value of the coach and the value as indicated by the standard industry reference book, that figure then being subtracted from the purchase price to arrive at the jury's award. Even presuming the accuracy of defendant's figures and arithmetic, defendant's argument must fail.

Defendant relies on two cases, *Kelly, supra*, and *Niemi v Ford Motor Co*, 127 Mich App 811; 339 NW2d 651 (1983). Although *Kelly* states that in order to justify setting aside a verdict because of compromise, " 'the record must make it clear that the jury reached the result by splitting differences,' " *Kelly, supra* at 452, quoting *Buckner Loan Co, supra* at 200, this does not mean that an award that splits the difference

between two proposed amounts must necessarily be considered an improper compromise. Instead, *Kelly* stands for the proposition that a compromise may be found where the verdict is "contrary to the jury's special findings and the evidence." *Id.* Because we conclude above that plaintiff's witness on the issue of damages properly testified regarding the value of the coach, plaintiff's figure based on that witness' formulae was properly before the jury, as was, obviously, the higher value indicated by the standard reference work that defendant insists should have been the sole measure of value. Because the jury's award fell within the range that either figure would have produced, the jury's verdict comported with the evidence and the jury's findings. Indeed, the jury could have validly returned a higher verdict. " 'If the defendants are liable for damages in any amount, they have no reason to complain of a verdict that gave the plaintiff . . . less than it was entitled to.' " *Kelly, supra* at 453, quoting *Joseph N Smith & Co v Dickinson*, 246 Mich 689, 694; 225 NW 580 (1929).

*Niemi, supra*, is likewise distinguishable from this case. *Niemi* involved a jury poll that revealed real disagreement and compromise among the jurors. *Id.* at 813. A valid verdict required the agreement of five out of six jurors, *id.* at 815, but two, when polled, used the word "compromise," *id.* at 813. One expressed sufficient additional disagreement that her vote was wholly discounted. *Id.* at 815. The other, although having spoken of compromise, nonetheless "stated that the answers contained in the juror's response to questions submitted by the court were hers when requestioned," thus accepting responsibility for her vote, and not demonstrating "the type of

showing of a surrendering of conscientious convictions" as may constitute a compromise. *Id.*

In this case, both parties declined to have the jury polled. The trial transcript shows, however, that the jury did collectively assent to the verdict. Thus, every indication in the record reflects that every juror fully agreed with the verdict as a matter of personal judgment.

IV

MOTION FOR A NEW TRIAL OR REMITTITUR

Where a trial court concludes that the only error at trial was that the award of damages exceeded what the evidence could support, the court may deny a motion for a new trial on the condition that the nonmoving party agrees to accept a judgment that the court determines to be the highest that the evidence would support. MCR 2.611(E)(1). A trial court's decision on a motion for remittitur is reviewed for an abuse of discretion. *Palenkas v Beaumont Hosp*, 432 Mich 527, 531; 443 NW2d 354 (1989). We find no abuse of discretion in this instance.

Defendant does not argue on appeal that remittitur should have been granted even if plaintiff's witness on damages properly testified or if the jury did not return a compromise verdict, thus rendering this issue an exercise in redundancy. Because we concluded above that (1) plaintiff's witness on damages properly testified and provided a reasonable alternative to the standard industry reference book for assessing the value of the coach, and (2) the jury did not reach an improper compromise verdict, we con-

clude also that the jury's award was indeed supported by the evidence. The trial court properly denied defendant's motion for remittitur.

V

ATTORNEY FEES UNDER THE MAGNUSON-MOSS ACT

Finally, both parties raise issues concerning the applicability of Magnuson-Moss attorney fees in this case.

Subsection 2310(d)(2) of the Magnuson-Moss Act provides as follows:

> If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate. [15 USC 2310(d)(2).]

Defendant argues that the trial court should have disallowed any recovery of Magnuson-Moss attorney fees on the ground that Michigan regards such expenses as incidental or consequential damages, which the warranty validly disclaimed in this case. Plaintiff, on the other hand, argues that the trial court erroneously took pains to avoid any duplication of attorney fees under the mediation rules and Magnuson-Moss, and further asks this Court to award appellate attorney fees under the Magnuson-Moss Act. Statutory interpretation is a question of law calling for review de novo. *Michigan Basic Property Ins*

*Ass'n v Ware*, 230 Mich App 44, 48; 583 NW2d 240 (1998). Where a trial court has discretion to award attorney fees, that award is reviewed for an abuse of discretion. *In re Condemnation of Private Property for Hwy Purposes*, 221 Mich App 136, 139-140; 561 NW2d 459 (1997).

A

Subsection 2304(a)(3) of the Magnuson-Moss Act, 15 USC 2304(a)(3), provides that a "warrantor may not exclude or limit consequential damages for breach of any written or implied warranty on such product, unless such exclusion or limitation conspicuously appears on the face of the warranty . . . ." In the present case, such a conspicuous limitation appeared on the warranty, in light of which the trial court dismissed plaintiff's claim for incidental or consequential damages. Defendant argues that under Michigan law, attorney fees are characterized as incidental or consequential damages, and that accordingly they should not have been awarded under Magnuson-Moss.

Apparently, no published appellate decision from this state directly addresses the question whether attorney fees must, or must not, be characterized as incidental or consequential damages for purposes of the Magnuson-Moss Act. However, the act itself addresses the interplay of state and federal law. Subsection 2311(b)(2), 15 USC 2311(b)(2), states, "Nothing in this chapter . . . shall . . . (B) supersede any provision of State law regarding consequential damages for injury to the person or other injury." Although this language may be read as intended to preserve state law where it affords a plaintiff better remedies, see *Walsh v Ford Motor Co*, 627 F Supp

1519, 1524 (D DC, 1986)  (Subsection 2311[b][2])'s deference to state law stems from the Magnuson-Moss Act's remedial nature), it may also be read to indicate that where state law restricts incidental or consequential damages, those restrictions remain valid when applying Magnuson-Moss. See *Kruger v Subaru of America, Inc*, 996 F Supp 451, 458 (ED Penn, 1998)  (where "state law allows for the exclusion of collateral damages" a plaintiff may not recover them under Magnuson-Moss).

Some Michigan cases have addressed the relationship between attorney fees and incidental or consequential damages as concerns the UCC, § 2715 of which provides definitions for "incidental" and "consequential" damages:

> (1) Incidental damages resulting from the seller's breach include expenses reasonably incurred in inspection, receipt, transportation and care and custody of goods rightfully rejected, any commercially reasonable charges, expenses or commissions in connection with effecting cover and any other reasonable expense incident to the delay or other breach.
>
> (2) Consequential damages resulting from the seller's breach include
>
> (a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise; and
>
> (b) injury to person or property proximately resulting from any breach of warranty. [MCL 440.2715; MSA 19.2715.]

The first case to tackle the issue was *Cady v Dick Loehr's, Inc*, 100 Mich App 543; 299 NW2d 69 (1980), which concluded that the UCC "confers on the trial court discretion to award attorneys' fees as an element of the damages incurred as a result of a breach

of warranty," and that accordingly an award of attorney fees "as a 'reasonable expense incident to the breach' was proper." *Id.* at 549, citing §§ 2714 and 2715 of the UCC. *Kelynack v Yamaha Motor Corp, USA,* 152 Mich App 105, 114; 394 NW2d 17 (1986), cited *Cady* and likewise equated attorney fees with incidental or consequential damages for purposes of the UCC. Additionally, this Court in *Fagerberg v LeBlanc,* 164 Mich App 349, 357; 416 NW2d 438 (1987), after reviewing a land contract case that did not implicate the UCC, concluded that "attorney . . . fees represented damages which were actually and proximately caused by [the defendant's] misrepresentation" and characterized such attorney fees as "consequential damages."

In this case, the trial court concluded that an award of attorney fees under Magnuson-Moss was proper even though plaintiff was barred from recovering incidental or consequential damages. We agree with the trial court and hold that for purposes of the Magnuson-Moss Act attorney fees are not barred by a warranty's exclusion of incidental or consequential damages.

*Cady, Kelynack,* and *Fagerberg* did not involve petitions for attorney fees under the Magnuson-Moss Act, and none stated that attorney fees must be equated with incidental or consequential damages in all contexts.[3] In interpreting Magnuson-Moss, we must be mindful of our duty to ascertain and give effect to the legislative intent behind the statute. *Michigan Basic Property Ins Ass'n, supra* at 49. The provision

---

[3] In addition, we note that all three of these cases were decided before November 1, 1990, and thus are not binding precedent for resolution of this case. MCR 7.215(H)(1).

for awarding attorney fees in Magnuson-Moss exists in order to assist consumers in vindicating their rights where legal expenses would otherwise be prohibitive. *Jordan v Transnat'l Motors, Inc*, 212 Mich App 94, 97-98; 537 NW2d 471 (1995). Further, legislation that is remedial in nature should be interpreted broadly to advance its purpose. *Eide v Kelsey-Hayes Co*, 431 Mich 26, 34; 427 NW2d 488 (1988). There is no reason to believe that Congress intended that its allowance of *statutory* attorney fees under Magnuson-Moss be limited by a contractual bar of incidental and consequential damages simply because attorney fees may sometimes be recoverable as incidental or consequential damages under state law. For these reasons, we hold that a contractual bar of incidental or consequential damages does not bar a successful plaintiff from recovering attorney fees under the Magnuson-Moss Act, when otherwise appropriate.

B

At a postjudgment hearing, plaintiff requested attorney fees as mediation sanctions, plus a much larger award of attorney fees under the Magnuson-Moss Act, readily admitting that the Magnuson-Moss petition duplicated, in part, the request for mediation sanctions, but arguing that overlapping recovery was appropriate on the ground that the attorney fee provisions of the two authorities existed for different purposes. However, our Supreme Court recently repudiated the proposition that double recovery of attorney fees under two authorities is appropriate if the authorities advance different purposes. *Rafferty v Markovitz*, 461 Mich 265, 272-273, n 6; 602 NW2d 367 (1999) (overruling *Howard v Canteen Corp*, 192 Mich

App 427; 481 NW2d 718 [1991], and repudiating dicta in *McAuley v General Motors Corp*, 457 Mich 513; 578 NW2d 282 [1998], "that left open the possibility of recovering attorney fees under both a court rule and a statute where each attorney-fee provision serves an independent purpose").

We conclude that *Rafferty* controls this issue, rendering unnecessary any consideration of whether the attorney fee provisions of the mediation rules and the Magnuson-Moss Act advance different purposes. In this case, the trial court correctly assessed, or anticipated, the current state of Michigan law in this matter and properly disallowed any overlap in the recovery of attorney fees under the two authorities.

C

Finally, plaintiff seeks to recover appellate attorney fees under the Magnuson-Moss Act, citing two sister state cases that stand for the proposition that the act's provision for attorney fees embraces appellate litigation: *Troutman v Pierce, Inc*, 402 NW2d 920, 925 (ND, 1987), and *Hyler v Garner*, 548 NW2d 864, 876 (Iowa, 1996). *Troutman* declared that a successful plaintiff's recovery of attorney fees should not be dissipated as the result of defending an appeal and accordingly remanded the case to the trial court for a determination of reasonable appellate attorney fees. *Troutman, supra* at 924-926. *Hyler* cited *Troutman* and followed suit. *Hyler, supra* at 876. No authority to the contrary has been presented. See also *Grow v W A Thomas Co*, 236 Mich App 696, 720; 601 NW2d 426 (1999) (remanding for determination and award of reasonable appellate attorney fees to a successful plaintiff under the Civil Rights Act).

We agree with *Troutman* and *Hyler* and will follow the analogy in *Grow*. Again, subsection 2310(d)(2) of the Magnuson-Moss Act authorizes recovery of attorney fees by a "consumer" who "finally prevails" in a cause of action under the act. Bearing in mind the remedial purpose behind the legislation, it is reasonable to recognize that where a defendant has chosen to appeal, the plaintiff has not achieved finality until the plaintiff has prevailed in the appellate arena.[4] Accordingly, we remand this case to the trial court for determination of an award of plaintiff's actual and reasonable appellate attorney fees.

Affirmed, but remanded for a determination of plaintiff's appellate attorney fees. No taxable costs, neither party having prevailed in full. We do not retain jurisdiction.

---

[4] Plaintiff also argues, incidentally, that appellate attorney fees are appropriate as mediation sanctions under MCR 2.403(O). However, plaintiff's question as presented on cross appeal refers to the Magnuson-Moss Act only, not to the mediation rules as an alternative ground for seeking appellate attorney fees. Thus, this issue is waived. *Meagher v McNeely & Lincoln, Inc*, 212 Mich App 154, 156; 536 NW2d 851 (1995) (an issue that is not raised within the statement of questions in the brief on appeal is not preserved for appellate review). Further, this argument fails on its merits. "[M]ediation sanctions provided for in MCR 2.403(O) are only intended to apply through final judgment at the trial court level. . . . Said rule does not provide for mediation sanctions for appellate activities." *American Casualty Co v Costello*, 174 Mich App 1, 13; 435 NW2d 760 (1989), citing *Fisher v Detroit Free Press, Inc*, 158 Mich App 409, 416-419; 404 NW2d 765 (1987). See also *Giannetti Bros Constr Co v City of Pontiac*, 175 Mich App 442, 447; 438 NW2d 313 (1989) ("Postjudgment appellate attorney fees do not fall within the realm of mediation sanctions awardable under the court rules.").