ZANTEL MARKETING AGENCY v WHITESELL CORPORATION

Docket No. 248313. Submitted December 21, 2004, at Detroit. Decided
     March 29, 2005, at 9:00 a.m.

Zantel Marketing Agency brought an action in the Wayne Circuit
     Court against Whitesell Corporation; Whitesell of Michigan, Inc.
     (WOM); Stamptech of Michigan, Inc.; and William Whitaker,
     seeking commissions under the sales representatives commissions
     act, MCL 600.2961, for transactions occurring after the purchase
     of Stamptech's assets by WOM. Zantel had served as Stamptech's
     sales agent under a ten-year agreement before Stamptech's assets
     were purchased. The sales agency agreement provided that it was
     not transferable to a third party. Further, the agreement for the
     purchase of Stamptech's assets listed specifically the liabilities
     that WOM was assuming, and the sales agency agreement was not
     included. After the jury returned a verdict for the plaintiff, the
     defendants sought remittitur or judgment notwithstanding the
     verdict, which the court, Warfield Moore, Jr., J., denied. The
     defendants appealed the judgment entered on the verdict, and the
     plaintiff cross-appealed the portion of the judgment that directed
     the defendants to pay attorney fees as case evaluation sanctions
     rather than attorney fees as allowed by the sales representatives
     commissions act.

The Court of Appeals held:

1. Under Michigan law, a corporation that acquires the assets
     of another corporation is not liable for the selling corporation's
     liabilities unless the transaction amounts to a consolidation or
     merger, the acquiring corporation expressly or impliedly agrees to
     assume the selling corporation's obligations, the new corporation
     is a mere continuation of the old corporation, or the sale is
     fraudulent. Because WOM expressly limited its liabilities in the
     asset purchase agreement, neither an express nor an implied
     agreement to assume any liability to Zantel arising from the sales
     agency agreement can be found. Commissions received by Zantel
     after the closing are consistent with the asset purchase agreement,
     not an assumption of the agency sales agreement.

2. The asset purchase agreement between WOM and
     Stamptech precludes liability for Whitesell or WOM under the

1987 sales agency agreement between Stamptech and Zantel. The asset purchase agreement unambiguously provides that liabilities arising by contract before the closing date were not assumed by WOM unless specifically stated in the closing documents. The sales agency agreement between Stamptech and Zantel specifically prohibited transferability of the agency relationship and arose before the closing of the asset purchase agreement. There was no contractual liability for the sales agreement assumed in the closing documents.

   3. The cross-appeal by the plaintiff is moot.

Reversed and remanded for entry of judgment of no cause of action in favor of Whitesell and WOM.

CORPORATIONS — SALE OF ASSETS — SUCCESSOR LIABILITY — DEBTS AND LIABILITIES.

A corporation that acquires the assets of another corporation is not liable for the selling corporation's liabilities unless the transaction amounts to a consolidation or merger, the acquiring corporation expressly or impliedly agrees to assume the selling corporation's obligations, the new corporation is a mere continuation of the old corporation, or the sale is fraudulent.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *David J. Szymanski, Patrick Burkett,* and *Beth N. Desmon*), for Zantel Marketing Agency.

*Clark Hill PLC* (by *Timothy D. Wittlinger, James E. Brenner, Danon D. Goodrum,* and *Paul Smith*) for Whitesell Corporation and Whitesell of Michigan, Inc.

Before: METER, P.J., and WILDER and SCHUETTE, JJ.

WILDER, J. Defendants, Whitesell Corporation (Whitesell) and Whitesell of Michigan, Inc. (WOM), appeal as of right the judgment entered on a verdict in favor of plaintiff Zantel Marketing Agency (Zantel). Zantel was awarded $353,737 in damages on its breach of contract claim, $26,670 in damages on its claim under the Michigan sales representatives commissions act (SRCA), MCL 600.2961, and case evaluation sanctions

and costs under MCR 2.403(O) in the amount $112,424 plus statutory interest. Zantel cross-appeals by right that portion of the judgment that directs defendants to pay attorney fees as case evaluation sanctions under MCR 2.403(O), and not under the SRCA, MCL 600.2961(6). We reverse the judgment in favor of Zantel and remand for entry of a judgment of no cause of action in favor of Whitesell and WOM.

## I. FACTS

### A. ZANTEL'S BUSINESS RELATIONSHIP WITH STAMPTECH

Beginning in August 1996, Zantel, a Canadian partnership engaged in the business of marketing businesses, and Stamptech Manufacturing Company, an affiliate of MacLean-Fogg Company (Stamptech), a Michigan manufacturer in the business of producing pierce nuts,[1] entered into a business relationship whereby Zantel served as Stamptech's exclusive representative for the sale of pierce nuts in Canada. On October 14, 1997, Zantel and Stamptech entered into a written sales agency agreement (agency agreement), drafted by Zantel and made effective retroactive to August 1996, that formalized the business relationship. The agreement was signed on behalf of Zantel by Cliff Ali, partner and founder of Zantel. Bill Whitaker signed for Stamptech as its president. The agency agreement provided that Zantel was granted and accepted the exclusive right to represent Stamptech as Stamptech's agent in Canada and that Zantel would sell in Canada for ten years the pierce nuts manufactured by Stamptech in exchange for a commission of five percent of net monthly sales. The agency agreement further

---

[1] Pierce nuts are fasteners used in the automotive and appliance industries.

provided that the agreement was "*not transferable to a third party* but will be honoured by new ownership, successors and assigns of either party and the terms and conditions can be mutually agreed upon with respect to the element of changes that might be considered." (Emphasis added.)

### B. STAMPTECH ENTERS NEGOTIATIONS TO SELL ITS ASSETS

Stamptech began to lose profitability, and Neil Whitesell, the owner of defendant companies, Whitesell and WOM, entered preliminary discussions/negotiations to purchase Stamptech's assets as an opportunity to cultivate business relationships in the automotive industry. At the time these preliminary negotiations were conducted WOM did not exist as a legal entity. WOM was incorporated in Alabama on August 26, 1998, for the purpose of purchasing the assets of Stamptech and operating a pierce nut business. On August 31, 1998, WOM, Stamptech, and MacLean-Fogg Company (MFC)[2] executed an "Asset Sale Agreement" (asset agreement). Whitesell, an Alabama corporation with business operations in Alabama and formed in 1972, was not a signatory to the asset agreement. Robert Weise, the chief operating officer and secretary/treasurer for Whitesell and WOM, drafted and negotiated the asset agreement. Pursuant to the asset agreement, WOM would purchase "substantially all" of Stamptech's assets, including its name, receivables, equipment, patents, and business lease. Multiple documents or "exhibits" were made part of the asset agreement, which itself comprised one of eight documents referenced in the "Index of Closing Documents" for the "Asset Sale

---

[2] MFC is a Chicago-based company, which had an eighty percent controlling interest in Stamptech. The remaining interest was controlled by MIOH Corporation.

between [Stamptech] and [WOM]." The asset agreement included an integration clause stating that the closing documents exhibits were incorporated into the asset agreement and that, together, the asset agreement and the closing documents reflected the entire agreement between the parties.

Paragraph 7.7 of the asset agreement states:

> 7.7 <u>Retained Liabilities</u>. Seller shall remain responsible for all debts, product warranties or guarantees, liabilities and obligations of, or claims (whether fixed or contingent) *arising by law or by contract or otherwise* for all actions or inactions of the Seller or related to the Business or the Purchased Assets on or *prior to the Closing Date* (the "Retained Liabilities"). Purchaser shall be responsible for all debts, liabilities and obligations of, or claims *arising by law or by contract or otherwise* for all actions or inactions of the Purchaser or related to the Business or the Purchased Assets *after the Closing date* together with those obligations or duties as specifically set forth on <u>Schedule A</u> to <u>Exhibit 3.2(b)</u> (the "Assumed Liabilities"). [Underline in original; emphasis added.]

Exhibit/Schedule A to the asset agreement states:

### EXHIBIT A

1. All of Seller's rights to the "Stamptech" name.

2. All of Seller's rights under United States Patent numbers 4,203,187 (expired May 20, 1997) and 4,306, 654 (expires December 22,1998).

3. All of Seller's rights and obligations under Certificate Number 1155 attached hereto.

4. All of Seller's rights and obligations under the Maintenance Agreement for a fax machine dated 5-28-96 and attached hereto.

5. All of Seller's rights and obligations under the Equipment Lease Agreement for one Gateway 2000 computer dated March 21, 1997 and attached hereto.

6. All of Seller's rights and obligations under the Performance Guarantee Agreement for a copier machined dated 11/21/95 and attached hereto.

7. Other than the Assumed Liabilities as defined in the Sale Agreement dated the date hereof, no liabilities are being transferred herein.

Exhibit 3.2(b) to the asset agreement states in its paragraph 3 that "[p]urchaser does hereby accept on the Closing Date established under the aforesaid Sale Agreement, and agrees to assume, agrees to perform, and in due course pay and discharge, only the obligations and liabilities of Seller set forth on Exhibit A hereto ('Contract Rights')." Paragraph 6 of Exhibit 3.2(b) states, in bold type: "With respect to any Contract Right that by its terms prohibits assignment without consent of the counterparty thereto, Purchaser and Seller agree that Purchaser shall perform the obligations of Seller thereunder from and after the Closing Date as if such contract had been assigned and Purchaser shall indemnify, defend and hold Seller harmless from and against any default by Purchaser thereunder."

### C. ZANTEL'S AND DEFENDANTS' BUSINESS RELATIONSHIP

Sometime in September 1998, a letter signed by Whitaker was sent to clients of Stamptech announcing that "Stamptech, a Division of Whitesell Corporation, has changed the company name to Whitesell of Michigan." In addition, Whitaker, in his new capacity as WOM general manger, informed Ali by letter dated September 1, 1998, that MFC's interest in Stamptech had been acquired by "Whitesell Corporation" and that a meeting would occur to "explore the possibilities" created by the acquisition. Ali received oral assurances from Whitaker that the agency agreement between

Zantel and Stamptech would remain unchanged. Zantel continued to market sales in Canada, and commission checks representing five percent of net sales were made payable to Ali by "Whitesell Corporation A.K.A Whitesell of Michigan, Inc." Between September 1998 and October 1998, Whitaker became dissatisfied with Ali's performance. On October 9, 1998, Whitaker sent a letter to Zantel to the attention of Ali, criticizing Ali's technical knowledge, sales technique, and constant telephone calls regarding the status of his commission checks. In a letter dated, February 25, 1999, and containing the letterhead "StampTech, a Division of Whitesell Corp.," Whitaker informed Ali that the services of "Zantel Marketing and yourself are terminated." The termination letter also informed Ali that "Zantel Marketing" would be paid for commissions earned through the month of March 1999. Whitaker notified clients with letterhead containing "StampTech, a Division of Whitesell Corp." that "StampTech has terminated association with Zantel Marketing and Mr. Cliff Ali." After Whitaker terminated Ali's and Zantel's services, "Whitesell of Canada" and another marketing company developed and distributed sales of pierce nuts in Canada.

## II. PROCEDURAL HISTORY

On June 15, 2000, plaintiff filed a five-count complaint against defendants[3] under various theories. This appeal only concerns plaintiff's SRCA and breach of contract claims. In its breach of contract claim, Zantel

---

[3] In addition to naming WOM and Whitesell as defendants, plaintiff's complaint named Whitaker, in his individual capacity; Stamptech of Michigan, Inc.; Stamptech GP, Inc; Stamptech Company Limited; MFC; and Whitesell Manufacturing as defendants. Ultimately, claims against all defendants except WOM and Whitesell were dismissed.

alleged it had a contractual relationship with defendants because the agency agreement expressly stated that defendants would honor the agreement originally made between Zantel and Stamptech. Under the SRCA claim, Zantel asserted it was the selling agent for all the pierce nut sales in Canada and thus was owed commissions before and after the date of its termination, including future commissions for sales under blanket purchase orders for the remainder of the ten-year term under the agency agreement. Zantel also alleged defendants, without good cause, terminated the agency agreement before the ten-year stated term. In defendants' July 19, 2000, answer, defendants raised the statute of frauds as an affirmative defense, denied the existence of any contract with Zantel, and asserted that Whitesell could not be held liable to Zantel because it was a separate corporate entity and also was not a party to the agency or asset agreements

At trial, Zantel argued Whitesell and WOM were indistinct successor corporations that, pursuant to the asset agreement, were jointly liable under an express or implied assumption theory. Defendants in turn argued that Whitesell and WOM were not successor corporations, rather they were two distinct corporations, neither one of which was contractually bound to honor the agency agreement between Zantel and Stamptech. Defendants contended that Zantel could not recover under its breach of contract or its SRCA claims in the absence of a contract because (1) the statute of frauds precluded Whitesell's liability as it was not a signatory to the asset agreement, and a writing between Zantel and defendants was required because performance under the agency agreement could not be performed in less than a year, and (2) WOM, which was a signatory to the sale agreement, was nonetheless not liable to Zantel under

the terms of the asset agreement. At the close of Zantel's proofs, the trial court denied defendants' motion for a directed verdict.

On August 7, 2003, following an eleven-day trial, the jury found that defendants had assumed the agency agreement as part of the asset agreement and returned a verdict against "defendants,"[4] awarding Zantel damages of $353,737 on the breach of contract claim and $8,890 for past due commissions on the SRCA claim. On October 29, 2002, the trial court entered judgment on the verdict against defendants jointly and severally, awarding $353,737 on the breach of contract claim, $105,240.30 in attorney fees and $7,183.70 in costs under MCR 2.403(O) from the date of the case evaluation through September 30, 2002, $8,890 in unpaid commissions and $17,780 in double damages under the SRCA, and $73,212.80 in statutory judgment interest for the period starting from the filing date of the complaint through September 30, 2002. After the entry of judgment, defendants moved for remittitur, judgment notwithstanding the verdict (JNOV), or a new trial. The trial court denied the motion, rejecting defendants' arguments that (1) the statute of frauds barred Zantel's claims, (2) the trial court effectively granted a directed verdict in favor of Zantel when it did not allow the jury to consider whether Whitesell and WOM should be treated as separate entities or the same corporate entity, and (3) the evidence did not support the jury's award of damages. On March 10, 2003, the trial court entered an order staying the proceedings

---

[4] The jury verdict form did not specifically provide the jury with an opportunity to determine defendants' liability individually, nor did it allow the jury to distinguish whether the agency agreement was assumed by the express terms of the sales agreement or defendants' subsequent conduct.

with regard to Whitesell only pending resolution of this appeal.

### III. STANDARDS OF REVIEW

This Court reviews de novo the trial court's decisions on a motion for a directed verdict and a motion for JNOV. *Wilkinson v Lee*, 463 Mich 388, 391; 617 NW2d 305 (2000). A directed verdict is appropriate only when no factual question exists on which reasonable jurors could differ. *Cacevic v Simplimatic Engineering Co (On Remand)*, 248 Mich App 670, 679-680; 645 NW2d 287 (2001). The appellate court reviews all the evidence presented up to the time of the directed verdict motion, considers that evidence in a light most favorable to the nonmoving party, and determines whether a question of fact existed. *Id.* at 679. In reviewing the decision on a motion for JNOV, this Court views the evidence and all legitimate inferences drawn from the evidence in the light most favorable to the nonmoving party. *Forge v Smith*, 458 Mich 198, 204; 580 NW2d 876 (1998). " 'If reasonable jurors could honestly have reached different conclusions, the jury verdict must stand.' " *Central Cartage Co v Fewless*, 232 Mich App 517, 524; 591 NW2d 422 (1998) (citation omitted).

"The doctrine of successor liability is ' "derived from equitable principles." ' " *Craig v Oakwood Hosp*, 471 Mich 67, 77; 684 NW2d 296 (2004), quoting *Stevens v McLouth Steel Products Corp*, 433 Mich 365, 376; 446 NW2d 95 (1989), quoting *Musikiwamba v ESSI, Inc*, 760 F2d 740, 750 (CA 7, 1985). "Its application is therefore subject to review de novo." *Craig, supra* at 77.

### IV. ANALYSIS

Defendants first argue that the trial court erred by denying their motions for a directed verdict and JNOV.

We agree. We conclude that the asset agreement precludes a finding that Whitesell or WOM is liable to Zantel under the 1997 agency agreement between Stamptech and Zantel. " 'The primary goal in the construction or interpretation of any contract is to honor the intent of the parties.' " *UAW-GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 491; 579 NW2d 411 (1998), quoting *Rasheed v Chrysler Corp*, 445 Mich 109, 127 n 28; 517 NW2d 19 (1994). Absent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of a written agreement. *Henderson v State Farm Fire & Cas Co*, 460 Mich 348, 354; 596 NW2d 190 (1999).

Here, reviewing the evidence in a light most favorable to Zantel, we find that the asset agreement unambiguously provides that WOM did not assume liability for the 1997 agency agreement between Zantel and Stamptech. The asset agreement clearly provides that liabilities arising by contract before the closing date were not assumed by WOM unless specifically so stated in Schedule A to Exhibit 3.2(b). It is undisputed that the agency agreement between Zantel and Stamptech was a contractual liability of Stamptech that arose before the closing of the asset agreement, and that this contractual liability was not listed in Schedule A. Thus, under the clear and unambiguous language of the asset agreement, the liability to Zantel remained that of Stamptech.

Plaintiff argues alternatively that WOM's agreement to assume liability for the agency agreement should be implied on the basis of the conduct of Whitesell in writing commission checks to Ali, the statements made to Ali by Whitaker, and the correspondence to Ali, Zantel, and Stamptech clients that used the names

Whitesell, WOM, and Stamptech interchangeably. We disagree. Under Michigan law, a corporation that acquires the assets of another corporation is not liable for the selling corporation's obligations, absent certain circumstances. *Shue & Voeks, Inc v Amenity Design & Mfg, Inc,* 203 Mich App 124, 127-128; 511 NW2d 700 (1993). Such circumstances exist where (1) the transaction amounts to a consolidation or merger, (2) the acquiring corporation expressly or impliedly agrees to assume the selling corporation's obligations, (3) the new corporation is a mere continuation of the old corporation, or (4) the sale is fraudulent. *Id.* at 128, citing *Antiphon, Inc v LEP Transport, Inc,* 183 Mich App 377, 382-383; 454 NW2d 222 (1990). Here, because WOM expressly limited its liabilities in the asset agreement, an implied agreement to assume any liability to Zantel arising from the agency agreement cannot be found. *Barber v SMH (US), Inc,* 202 Mich App 366, 375; 509 NW2d 791 (1993).

Moreover, the fact that Ali and Zantel received commissions for sales of pierce nuts after the closing is consistent with the asset agreement and does not suggest an assumption of the agency agreement. WOM agreed to assume liabilities arising after the closing date. There can be no dispute that WOM had a liability to Zantel for any sales by Zantel on behalf of WOM after the closing of the asset sale. Payment by WOM resulting from these liabilities is insufficient to render ambiguous the clear language of the asset agreement that WOM did not assume the agency agreement as a liability.

V. CONCLUSION

The trial court erred by denying the directed verdict motion of WOM and Whitesell because the plain language of the asset agreement establishes that the ten-

year agency agreement between Zantel and Stamptech was not a liability assumed by WOM at the time of the closing of the asset sale. Subsequent payments of commissions by WOM to Zantel do not serve to imply a contract between Zantel and WOM or Whitesell that is contrary to the express language of the asset agreement, but instead reflect the express agreement by WOM that it would assume any liabilities arising by law, contract, or otherwise after the closing of the asset sale. Commissions paid for sales made by Zantel in Canada after the closing reflect such a liability.

Because we find the trial court erred by denying the directed verdict motion of WOM, we need not address the remaining claims raised by WOM and Whitesell. In addition, the cross-appeal by Zantel is moot. We reverse, remand for entry of judgment of no cause of action in favor of Whitesell and WOM, and do not retain jurisdiction.