HEATON v BENTON CONSTRUCTION COMPANY

Docket No. 285805. Submitted October 13, 2009, at Lansing. Decided
October 27, 2009. Approved for publication December 22, 2009, at
9:10 a.m.

Gerald T. Heaton and Jonna Heaton brought an action in the
Shiawassee Circuit Court, Gerald D. Lostracco, J., against Benton
Construction Company, doing business as Great Lakes Superior
Walls (Great Lakes), Pristine Home Builders, Daniel J. Bonawitt,
and others, seeking damages, under theories of breach of contract,
express and implied warranties, and negligence, for damage that
occurred to a home that Pristine (operated by Bonawitt, a licensed
builder) built for the Heatons. Bonawitt subcontracted with Great
Lakes to design, manufacture, and install precast concrete foun-
dation walls for the home and the walls shifted twice during the
construction of the home. The essence of plaintiffs' claim was that
Great Lakes negligently failed to warn, inspect, or instruct regard-
ing using its foundation walls with appropriately designed and
constructed shear walls. A default judgment was entered against
Pristine and Bonawitt, and the other defendants, except Great
Lakes, settled. The case was submitted to the jury only on
plaintiffs' negligence theory after being tried on the issues of Great
Lakes' liability and damages. Bonawitt participated at trial only
regarding damages. The jury found Great Lakes 60 percent
negligent and Pristine and Bonawitt 40 percent negligent. The
court entered an order granting partial remittitur of the $272,500
jury award to $195,000, as the amount that the evidence showed
that plaintiffs' home diminished in value. The court also awarded
plaintiffs a reasonable attorney fee for case evaluation sanctions.
Great Lakes appealed the judgment entered after the jury verdict
and the order granting remittitur. Plaintiffs cross-appealed the
orders granting remittitur and a reasonable attorney fee for case
evaluation sanctions.

The Court of Appeals held:

1. The precast concrete walls made by Great Lakes were a
"product" with the meaning of the relevant products liability
statutes, MCL 600.2945 and MCL 600.2947. Even though plain-
tiffs' claim was one of ordinary negligence, it still could come

within the broad definitions of "product liability action" and "production" in MCL 600.2945(h) and (i).

2. The trial court did not err by concluding under the facts of this case that Bonawitt was not a sophisticated user as contemplated by MCL 600.2945(j) and MCL 600.2947(4), and, therefore, the sophisticated user defense provided for in MCL 600.2947(4) was inapplicable. No manifest injustice resulted from the trial court's failure to instruct the jury regarding Great Lakes' claim to a sophisticated user defense.

3. The trial court erred by granting the motion for remittitur. The evidence supported the verdict wherein the jury added the $77,500 plaintiffs incurred to partially repair their home to the $195,000 the home lost in value even with the repairs. The order granting remittitur must be reversed and the case must be remanded for the entry of a judgment for plaintiffs consistent with the verdict of the jury.

4. The attorney fee awarded as case evaluation sanctions was not outside the range of reasonable and principled outcomes and was not an abuse of discretion.

Judgment affirmed, order granting remittitur reversed, and case remanded for entry of judgment for plaintiffs consistent with the jury's verdict.

MURRAY, P.J., concurred in the determination of the majority that this is a products liability action, but dissented from the determination that, under the facts of this case, Daniel J. Bonawitt was not a sophisticated user. As a result, the trial court should have granted Great Lakes' motion for summary disposition and dismissed plaintiffs' claim to the extent that it was premised on a failure to warn. The trial court's order should be reversed in part and the case should be remanded for dismissal of the failure to warn theory. Such a dismissal does not necessitate dismissal of the entire judgment, because plaintiffs also posited a failure to instruct theory separate from the failure to warn theory.

PRODUCTS LIABILITY — WORDS AND PHRASES — SOPHISTICATED USERS — DEFENSES — FAILURE TO WARN.

A "sophisticated user" for purposes of the sophisticated user defense to a claim of failure to warn in a products liability action, means a person or entity that, by virtue of training, experience, a profession, or legal obligations, is or is generally expected to be knowledgeable about a product's properties, including a potential hazard or adverse effect (MCL 600.2945[j], 600.2947[4]).

*The Gallagher Law Firm* (by *Jennifer M. Endl, Peter C. Brown,* and *Byron P. Gallagher, Jr.*) for Gerald T. and Jonna Heaton.

*Garan Lucow Miller, P.C.* (by *Robert D. Goldstein* and *Paul E. Tower*), for Benton Construction Company.

Before: MURRAY, P.J., and MARKEY and BORRELLO, JJ.

PER CURIAM. Plaintiffs filed this action for damages, asserting that defendants' negligence caused the foundation of their home to shift during its construction. Defendant Benton Construction Company, doing business as Great Lakes Superior Walls (Great Lakes), appeals by right the judgment entered after a jury verdict finding it 60 percent negligent and defendants Pristine Home Builders (Pristine) and Daniel J. Bonawitt (Bonawitt) 40 percent negligent. Great Lakes also appeals the trial court's order granting partial remittitur of the $272,500 jury award in plaintiffs' favor to $195,000, as the amount the evidence showed that plaintiffs' home diminished in value. Great Lakes contends it should have been granted judgment as a matter of law, but if not, the jury's verdict should have been reduced to $77,500, the cost of repairing the damage to plaintiffs' home. Plaintiffs cross-appeal the trial court's order granting remittitur and the trial court's determination of a reasonable attorney fee for case evaluation sanctions. We affirm, but also reverse the trial court's order granting remittitur and remand for entry of judgment for plaintiffs consistent with the jury's verdict.

Plaintiffs Gerald T. Heaton and Jonna Heaton entered a contract with defendant Pristine, operated by defendant Bonawitt, a licensed builder, to build their retirement home at Scenic Lake in Shiawassee County. Bonawitt subcontracted with defendant Great Lakes

(hereinafter, defendant) to design, manufacture, and install precast concrete foundation walls for the home. During the construction of the home the foundation walls twice shifted, first in September 2005 after the retaining foundation wall was partially backfilled and again in October 2005 after shear (supporting) walls were installed on the advice of defendant and further backfilling. Plaintiffs sued under theories of breach of contract, express and implied warranties, and negligence. Defendants Pristine and Bonawitt were defaulted. The other defendants, except Great Lakes, settled. The case was tried to a jury on the issues of defendant's liability and damages; Bonawitt participated at trial without counsel on the issue of damages only. Ultimately, the case was submitted to the jury only on plaintiffs' negligence theory.

Defendant first argues that the trial court erred by not granting one of its dispositive motions for judgment as a matter of law. Specifically, the trial court denied defendant's motion for summary disposition under MCR 2.116(C)(10), denied defendant's motions for a directed verdict after opening statement and at the close of plaintiffs' proofs, and denied defendant's motion for judgment notwithstanding the verdict (JNOV). Our review of the trial court's decision regarding each of these motions is de novo. *Diamond v Witherspoon*, 265 Mich App 673, 680-681; 696 NW2d 770 (2005).

Defendant's motion under MCR 2.116(C)(10) tested the factual sufficiency of plaintiffs' claim. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). The trial court was required to consider the substantively admissible evidence the parties submitted in the light most favorable to the nonmoving party. *Id.* at 120-121; MCR 2.116(G)(5). If the evidence the parties proffer does not establish that a disputed material issue

of fact remains for trial and if it appears that a party is entitled to judgment as a matter of law, summary disposition is appropriate. MCR 2.116(C)(10), (G)(4), (I)(1); *Maiden, supra* at 120.

When reviewing a trial court's decision on a motion for a directed verdict, this Court must view the evidence presented up to the point of the motion and all legitimate inferences from the evidence in the light most favorable to the nonmoving party to determine whether a fact question existed. *Zantel Marketing Agency v Whitesell Corp*, 265 Mich App 559, 568; 696 NW2d 735 (2005). A trial court properly grants a directed verdict only when no factual question exists upon which reasonable minds could differ. *Diamond, supra* at 681. Similarly, a motion for JNOV should be granted only when there was insufficient evidence presented to create an issue of fact for the jury. *Merkur Steel Supply, Inc v Detroit*, 261 Mich App 116, 123; 680 NW2d 485 (2004). This Court must view the testimony and all legitimate inferences drawn from the testimony in the light most favorable to the nonmoving party. *Diamond, supra* at 682; *Forge v Smith*, 458 Mich 198, 204; 580 NW2d 876 (1998). "If reasonable jurors could honestly have reached different conclusions, the jury verdict must stand." *Diamond, supra* at 682.

Defendant argues that it was entitled to judgment as a matter of law because, although plaintiffs couched their complaint in terms of negligence, the case was actually a products liability claim for failure to warn. Defendant contends that the undisputed facts establish that it furnished a "product," precast concrete foundation walls. See *Fenton Area Pub Schools v Sorensen-Gross Constr Co*, 124 Mich App 631, 639; 335 NW2d 221 (1983), noting that MCL 600.2945 does not define "product" but a dictionary defines " 'product' as 'a

thing produced by labor'." Here, the undisputed facts established defendant's "product" was neither defective nor the cause of the foundation movement at issue. Rather, the foundation shifted because Bonawitt failed to initially install shear walls, and then subsequently installed shear walls that were inadequately designed or constructed. The lynchpin of defendant's argument is that Bonawitt was a "sophisticated user" of defendant's foundation walls, having been a licensed builder since 1997, and experienced in all phases of construction, including the use of shear walls. Consequently, defendant argues that, under MCL 600.2947(4), it had no duty to warn Bonawitt of the need for shear walls. Finally, defendant correctly notes that the question of duty is one for the trial court to decide as matter of law, citing *Antcliff v State Employees Credit Union*, 414 Mich 624, 640; 327 NW2d 814 (1982) ("It is well-settled law that the question of duty is to be resolved by the court rather than the jury."). For these reasons, defendant argues, the trial court erred by not granting one of its dispositive motions for judgment as a matter of law.

The statutes pertinent to this issue provide:

> (g) "Product" includes any and all component parts to a product.

> (h) "Product liability action" means an action based on a legal or equitable theory of liability brought for the death of a person or for injury to a person or damage to property caused by or resulting from the production of a product.

> (i) "Production" means manufacture, construction, design, formulation, development of standards, preparation, processing, assembly, inspection, testing, listing, certifying, warning, instructing, marketing, selling, advertising, packaging, or labeling.

> (j) "Sophisticated user" means a person or entity that, by virtue of training, experience, a profession, or legal obligations, is or is generally expected to be knowledgeable

about a product's properties, including a potential hazard or adverse effect. An employee who does not have actual knowledge of the product's potential hazard or adverse effect that caused the injury is not a sophisticated user. [MCL 600.2945(g), (h), (i), and (j).]

\* \* \*

(4) Except to the extent a state or federal statute or regulation requires a manufacturer to warn, a manufacturer or seller is not liable in a product liability action for failure to provide an adequate warning if the product is provided for use by a sophisticated user. [MCL 600.2947(4).]

The trial court denied defendants motion for two reasons: (1) plaintiffs' claim was not one of products liability but rather one for ordinary negligence, and (2) under the facts of the case, Bonawitt was not a "sophisticated user" as contemplated by the statute. "This Court reviews de novo the interpretation and application of statutes as questions of law." *Gilliam v Hi-Temp Products Inc*, 260 Mich App 98, 108; 677 NW2d 856 (2003). "In addition, we review the trial court's factual findings that support its legal holdings for clear error." *Detroit v Ambassador Bridge Co*, 481 Mich 29, 35; 748 NW2d 221 (2008).

First, we accept defendant's argument that its precast concrete foundation walls were a "product" within the meaning of the products liability statutes. Second, for purposes of our analysis of this issue, we accept defendant's assertion that even though plaintiffs' claim was one of ordinary negligence, it still could come within the broad definitions of "product liability action" and "production" in MCL 600.2945(h) and (i). Splicing these two definitions together, they would read, pertinent to this case: " 'Product liability action' means an action based on a legal . . . theory of liability brought

for . . . damage to property caused by or resulting from the assembly, inspection, . . . warning, [or] instructing [regarding the use of] a product." Thus, the fact that plaintiffs' theory of liability was one of negligence does not preclude its action from coming within the statutory definition of a products liability action because negligence is "a legal . . . theory of liability brought for . . . damage to property." Further, the essence of plaintiffs' claim was that defendant negligently failed to warn, inspect, or instruct regarding using its foundation walls with appropriately designed and constructed shear walls.

Nevertheless, we conclude that the trial did not err by ruling on the basis of the facts of this case that Bonawitt was not a sophisticated user as contemplated by the statute. A "sophisticated user" is one who "by virtue of training, experience, [or] a profession, . . . is or is generally expected to be knowledgeable about a product's properties, including a potential hazard or adverse effect." MCL 600.2945(j). Here, although Bonawitt was a licensed builder engaging in home construction since 1997, he testified that he had built only 12 houses under his license and had never used the type of foundation that Great Lakes provided. In Bonawitt's words, he "built like one and a half houses a year, adequate to support my family." Further, Bonawitt testified that he relied on various subcontractors and engineers for their expertise regarding various aspects of construction. He also testified that he relied on a "Builder Guideline Booklet," which is subtitled "Site Preparation and Framing Attachment Requirements," that Great Lakes provided him. Specifically, Bonawitt read page 36 of this booklet that addressed shear walls as stating that with respect to plaintiffs' home, shear walls were not necessary because no continuous span of the foundation was greater than 42 feet. This page of

defendant's booklet also warns: "Shear walls may need to be individually reviewed by an engineer." Bonawitt testified he had graduated from high school and had some college-level credits. These facts establish that Bonawitt did not have the education, experience, or professional standing that defendant's own builders' booklet warns may be necessary regarding the use of shear walls to support its foundation walls. Consequently, because we find no error in the trial court's ruling that Bonawitt was not a "sophisticated user" as defined in MCL 600.2945(j), the "sophisticated user" defense provided for in MCL 600.2947(4) is inapplicable.

Moreover, MCL 600.2947(4) only limits products liability with respect to a duty to provide an "adequate warning" to sophisticated users where not otherwise required by state or federal statute or regulation. Plaintiffs' theory of liability was much broader than simply the failure to provide an adequate warning. It included a claim for breach of a duty to provide adequate instructions regarding the need for shear walls, and for defendant's active participation with Bonawitt in devising the shear walls that subsequently failed to adequately support the foundation walls. Plaintiffs' theory of the case, supported by the evidence, is best characterized as an "application of the basic rule of the common law, which imposes on every person engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others." *Clark v Dalman*, 379 Mich 251, 261; 150 NW2d 755 (1967); see also *Johnson v A & M Custom Built Homes of West Bloomfield, PC*, 261 Mich App 719, 722; 683 NW2d 229 (2004), and *Osman v Summer Green Lawn Care, Inc*, 209 Mich App 703, 707-708; 532 NW2d 186 (1995), overruled in part on other grounds *Smith v*

*Globe Life Ins Co*, 460 Mich 446, 455 n 2 (1999). Applying the appropriate legal analysis to the facts of this case we conclude the trial court did not err by denying defendant's motions for judgment as a matter of law based on its claim to a sophisticated user defense under MCL 600.2947(4).

Next, defendant argues that the trial court erred by failing to instruct the jury regarding its claim to a sophisticated user defense. This Court reviews de novo claims of instructional error. *Lewis v LeGrow*, 258 Mich App 175, 211; 670 NW2d 675 (2003). To preserve an instructional issue for appeal, a party must request the instruction before instructions are given and must object on the record before the jury retires to deliberate. MCR 2.516(C); *Leavitt v Monaco Coach Corp*, 241 Mich App 288, 300; 616 NW2d 175 (2000). Here, defendant points only to an oblique comment by defense counsel *after* the jury was instructed that the Court of Appeals is "nitpicky" and that "this is actually a products liability case and products liability instructions should apply . . . ." Defendant fails to show where in the record counsel requested that the trial court give the jury a specific instruction on its claim to a sophisticated user defense. The failure to timely and specifically object precludes appellate review absent manifest injustice. *Bouverette v Westinghouse Electric Corp*, 245 Mich App 391, 403; 628 NW2d 86 (2001). No manifest injustice occurred here because, as we have earlier concluded, the trial court properly ruled as a matter of law that Bonawitt was not a sophisticated user within the meaning of MCL 600.2945(j) and MCL 600.2947(4).

Both parties appeal the trial court's partial grant of remittitur. Defendant contends the trial court abused its discretion by only reducing the jury verdict in plaintiffs' favor from $272,500 to $195,000. Defendant

asserts that the jury's verdict should have been reduced to the cost of repairing the damage to plaintiffs' home, which Great Lakes argues was $77,500. Plaintiffs, on the other hand, argue on cross appeal that after the foundation shifted the second time, the house could be restored to its predamaged condition only by tearing down what had been erected at that time and rebuilding. The evidence at trial showed that plaintiffs had already expended $220,000 to $250,000, so the cost of repair would certainly have exceeded that amount. Thus, the jury properly added the $77,500 plaintiffs incurred to partially repair their home to the $195,000 the home lost in value even with the partial repairs. Because the evidence supported the jury's verdict, plaintiffs assert the trial court abused its discretion by granting remittitur. We agree.

When a jury awards damages that appear excessive because of the influence of passion or prejudice, or the jury award is clearly or grossly excessive, a court may grant a new trial. MCR 2.611(A)(1)(c)-(d). Alternatively, a trial court may offer the prevailing party an opportunity to consent to judgment in the highest amount the court finds is supported by the evidence. MCR 2.611(E)(1). This Court reviews a trial court's decision regarding a motion for remittitur or a new trial for an abuse of discretion. *Palenkas v Beaumont Hosp*, 432 Mich 527, 531; 443 NW2d 354 (1989). An abuse of discretion occurs when a court chooses an outcome that is outside the range of principled outcomes. *McManamon v Redford Twp*, 273 Mich App 131, 138; 730 NW2d 757 (2006).

Analysis of this issue must start with the principle that the adequacy of the amount of the damages is generally a matter for the jury to decide. *Kelly v Builders Square, Inc*, 465 Mich 29, 35; 632 NW2d 912

(2001). Moreover, a verdict should not be set aside merely because the method the jury used to compute damages cannot be determined. *Diamond, supra* at 694. This Court must view the evidence in the light most favorable to the nonmoving party. *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 499; 668 NW2d 402 (2003). "A trial court's order of remittitur is governed by MCR 2.611(E)(1)." *Palenkas, supra* at 531. Accordingly, remittitur is justified only "if the jury verdict is 'excessive,' i.e., if the amount awarded is greater than 'the highest amount the evidence will support.' " *Id.*, quoting MCR 2.611(E)(1).

Both parties cite *Baranowski v Strating*, 72 Mich App 548; 250 NW2d 744 (1976), regarding the proper measure of damages in a negligence action for damages to real property. In that case, the plaintiffs sought damages in a contract and negligence action against a builder after the foundation of the plaintiffs' home settled because of unsuitable soil. This Court affirmed the trial court's assessment of damages ($20,600) as the amount of the loss in value because the cost of repair—$50,000 to place the home on a secure footing—was far greater than its loss in value. The Court opined: "[T]he measure of damages to real property in a negligence suit where the damage cannot be repaired is the difference between the market value of the property before and after the injury; where the damage can be repaired and the cost of repair is less than the value of the property prior to the injury, cost of repair is the proper measure." *Id.* at 562. Before stating this general rule, the Court was careful to note "that there is and should be no fixed rule for measuring compensation in cases such as this." *Id.* Pertinent to the instant case, the *Baranowski* Court rejected the defendants' claim that the measure of the cost of repair was the plaintiffs' expenses to partially cure the problem ($5,508.20). *Id.*

at 563. Rather, "the measure of cost of repair is . . . what expense would be necessary to put the house in the condition it would have been in had defendants not breached the duty they owed to the plaintiffs." *Id.*

As to damages, the trial court instructed the jury consistent with M Civ JI 51.05:

> In this case the Plaintiffs claim damages to their home. If you decide that Plaintiff [sic] is entitled to such damages, the amount should be measured by the lesser of the reasonable expense of necessary repairs to the property which was damaged or the difference between the fair market value of the property immediately before the occurrence and its fair market value immediately after the occurrence.

As noted above, the evidence adduced at trial would have permitted the jury to find that the damage to the home caused by the second foundation shift was essentially irreparable. Engineer Scott Walkowicz testified regarding the dilemma plaintiffs faced:

> When we were approached by Mr. Heaton he was at that point, already having problems with his house. His primary interest was whether or not the house could reasonably be saved or repaired and brought back to a condition that you would expect for a newly constructed house. So we went through, did field work, and as we were going through there some of the observations that we made—I'm not sure if I should state those—but ultimately it came down to the opinion that it would be a very, very difficult thing[,] if not impossible[,] to repair the house to the condition that it should've been prior to having moved, and that was due to a number of reasons; that there was lesser or kind of partial repairs whereby we can stabilize it and have reasonable confidence that it wouldn't move again or move further. Those were our two ultimate opinions.

Plaintiffs chose to stabilize, but not repair the foundation, and partially repair other damage to the struc-

ture at a cost of $77,500. Plaintiffs' real estate expert,
Robert Vertalka, testified that the value of plaintiffs'
home even after these partial repairs had still dimin-
ished by $195,000. Vertalka testified:

> *Counsel:* And I want to make sure that we understand
> whether that one hundred and ninety-five thousand dollar
> loss includes any of the costs that the homeowner would
> incur to partially cure or stabilize the problem with the
> foundation.
>
> *Vertalka:* It does not.
>
> *Counsel:* So any costs the homeowner incurred to stabi-
> lize or partially cure would be in addition to this loss in
> value?
>
> *Vertalka:* That's correct.

On the basis of this evidence and *Baranowski, supra*
at 563, we conclude that defendant's argument that the
jury award should have been reduced to $77,500 is
without merit. Consequently, defendant's final argu-
ment that the trial court erroneously awarded case
evaluations sanctions must also fail.

Further, we agree with plaintiffs that because the
evidence supported the jury's award, the trial court
abused its discretion by granting remittitur. *Palenkas,
supra* at 531; *McManamon, supra* at 138; MCR
2.611(E)(1). In general, a defendant found negligent is
liable for all injuries resulting directly from his or her
wrongful act, whether foreseeable or not, if the dam-
ages were the legal and natural consequences of the
defendant's conduct and might reasonably have been
anticipated. *Ensink v Mecosta Co Gen Hosp*, 262 Mich
App 518, 524; 687 NW2d 143 (2004), quoting *Sutter v
Biggs*, 377 Mich 80, 86-87; 139 NW2d 684 (1966). In
this case, viewing the evidence in the light most favor-
able to plaintiffs, *Wiley, supra* at 499, the jury could
have found: (1) that the cost of repair (complete rebuild

after damage) was in excess of $272,500, (2) that the $77,500 plaintiffs expended to stabilize the home was necessary to render it habitable and marketable, and (3) that the true damages to plaintiffs as a result of defendant's negligence was the sum of the cost to stabilize and the loss of the house's market value despite the repairs and after stabilization. In the light most favorable to plaintiffs, the evidence supported the jury's verdict and was consistent with the trial court's instruction. Because the evidence strongly supported the jury's award, the trial court abused its discretion by granting remittitur. MCR 2.611(E)(1); *Palenkas, supra* at 531; *McManamon, supra* at 138.

The final issue on appeal is plaintiffs' claim that the trial court abused its discretion when awarding case evaluation sanctions by determining that a reasonable hourly attorney fee rate was $185 and $70 an hour was reasonable for paralegal services. We disagree.

When case evaluation sanctions are appropriate, the actual costs to be charged are the costs taxable in any civil action plus a reasonable attorney fee. MCR 2.403(O)(6); *Dessart v Burak*, 470 Mich 37, 40; 678 NW2d 615 (2004). Here, plaintiffs had the burden of establishing the reasonableness of the requested attorney fee. *Smith v Khouri*, 481 Mich 519, 528-529; 751 NW2d 472 (2008). The trial court must determine a reasonable attorney fee on the basis of a reasonable hourly or daily rate for services necessitated by the rejection of the evaluation. MCR 2.403(O)(6)(b); *Dessart, supra* at 40. The determination of a reasonable hourly rate for an attorney fee to include in a sanction is within the trial court's discretion. *Zdrojewski v Murphy*, 254 Mich App 50, 73; 657 NW2d 721 (2002). The trial court abuses its discretion when its decision is outside the range of reasonable and principled outcomes. *Smith, supra* at 526.

In determining a reasonable hourly rate for an attorney fee, MCR 2.403(O)(6)(b), "a trial court should begin its analysis by determining the fee customarily charged in the locality for similar legal services . . . ." *Smith, supra* at 530. In doing so, "trial courts have routinely relied on data contained in surveys such as the Economics of the Law Practice Surveys that are published by the State Bar of Michigan." *Id.* In this case, the trial court rejected plaintiffs' requested hourly attorney fee rate of $225, which was in the 75th percentile of such a State Bar study. Instead, the trial court determined that because the instant case was not overly complex, a reasonable attorney fee rate in the court's locality was closer to the median hourly rate of $195 according to same study. We conclude that the trial court's decision was within the range of reasonable and principled outcomes and, thus, was not an abuse of discretion. *Smith, supra* at 526.

We affirm, but also reverse the trial court's order granting remittitur and remand for entry of judgment for plaintiffs consistent with the jury's verdict. We do not retain jurisdiction. Because plaintiffs have prevailed regarding the issues on which defendant appealed, they may tax costs pursuant to MCR 7.219.

MURRAY, P.J. (*concurring in part and dissenting in part*). I concur in the majority's opinion that this is a products liability case, but respectfully disagree with its conclusion that Daniel J. Bonawitt was not a sophisticated user. In my view, Bonawitt was a sophisticated user, and, as a result, the trial court should have granted defendant Great Lakes Superior Walls' motion for summary disposition, and dismissed plaintiffs' claim to the extent that it was premised on a failure to warn.

Although the parties argue over whether plaintiffs' claim was actually one in negligence or products liabil-

ity, it was both. In other words, plaintiffs' claim was one of products liability that was based on a negligence theory. See *Prentis v Yale Mfg Co*, 421 Mich 670, 682; 365 NW2d 176 (1984); *Lemire v Garrard Drugs*, 95 Mich App 520, 523; 291 NW2d 103 (1980); *Bullock v Gulf & Western Mfg*, 128 Mich App 316, 319; 340 NW2d 294 (1983). Such a theory, as the majority recognizes, also falls squarely within the plain language of the statute. MCL 600.2946. And, although there are several statutory defenses and standards that are applicable to one or more products liability theories, defendant relies exclusively on the "sophisticated user" defense to a failure to warn theory contained in MCL 600.2945(j) and MCL 600.2947(4).[1]

The statutory definition of "sophisticated user" is:

> "Sophisticated user" means a person or entity that, by virtue of training, experience, a profession, or legal obligations, is or is generally expected to be knowledgeable about a product's properties, including a potential hazard or adverse effect. An employee who does not have actual knowledge of the product's potential hazard or adverse effect that caused the injury is not a sophisticated user. [MCL 600.2945(j)]

I would hold that there was no genuine issue of material fact that Bonawitt was a sophisticated user. It is undisputed that Bonawitt had been a professional homebuilder for the past 12 years, and that this was his exclusive line of business. The evidence is also undisputed that Bonawitt had built approximately 19 homes during his 12 years of business, and it is clear that when he contracted with plaintiffs to build their home, he

---

[1] I am assuming, because it is not addressed by the parties, that the "sophisticated user" defense applies to plaintiffs' cause of action even though the transaction was between defendant and Bonawitt, and this discussion is over whether Bonawitt, rather than plaintiffs, was a "sophisticated user."

held himself out as a professional homebuilder. Consequently, because of his training, experience, and profession, Bonawitt was a sophisticated user. At a minimum, given his profession and experience, he would generally be expected to be familiar with retaining walls that he purchased for use in building a home.

In light of this conclusion, I would reverse the trial court's order in part, and remand for dismissal of plaintiffs' failure to warn theory. Such a dismissal would not necessitate dismissal of the entire judgment, because plaintiffs also posited a failure to instruct theory, which is different from a failure to warn. See MCL 600.2945(i) (defining "production" as both "instructing" and "warning") and *Talcott v Midland*, 150 Mich App 143, 148; 387 NW2d 845 (1985). In all other respects, I concur in the majority opinion.