# STATE OF MICHIGAN

# COURT OF APPEALS

Estate of CHRISTOPHER GROULX, by
KATHRYN GROULX, Personal Representative,

UNPUBLISHED
April 23, 2015

Plaintiff-Appellee,

v

Nos. 320194; 320482
Bay Circuit Court
LC No. 11-003869-NI

DANNY FREDERICK BARD, JR., and SHAWN
MUMA LOGGING, INC.,

Defendants-Appellants.

Before: O'CONNELL, P.J., and FORT HOOD and GADOLA, JJ.

PER CURIAM.

In these consolidated appeals, defendants Danny Frederick Bard, Jr., and Shawn Muma Logging, Inc. ("Muma"), appeal as of right the trial court's judgment for plaintiff and order denying defendants' motion for a new trial or remittitur, following a jury trial in this wrongful death case. We reverse and remand for further proceedings consistent with this opinion.

This case arises from the death of 22-year-old Christopher Groulx, who was killed on September 12, 2011, when the car he was driving struck the rear of a logging machine, known as a feller buncher, owned by defendant Muma and driven by defendant Bard. Plaintiff filed a wrongful death action alleging negligence. Plaintiff alleged that the decedent was driving south on Garfield Road in Pinconning at approximately 6:10 a.m. At that time, the roadway was dark and there were areas of patchy fog in the air. Bard was operating a feller buncher in the southbound lane some distance ahead of decedent. The feller buncher did not have reflectors, taillights, or a reflective triangle, but it did have white lights at the top of the rear of the machine. The feller buncher was being driven at a speed of approximately 10 miles per hour. Plaintiff alleged that the machine was not visible at a reasonable distance because it did not have proper lights or reflectors, and that the decedent's car struck the back of the feller buncher, causing the decedent to incur severe pain, emotional distress, and fatal physical injuries.

The case proceeded to a jury trial. After presenting its witnesses, plaintiff moved for a directed verdict on the issue of the decedent's comparative negligence. The court took the motion under advisement and, after defendant concluded its proofs, granted the motion. The jury awarded plaintiff $37,410 in past economic damages, $2,000,000 in past non-economic damages ($500,000 of which was for conscious pain and suffering), $21,961.64 in future economic

-1-

damages, and $595,871.21 in future non-economic damages. The trial court thereafter entered a judgment for plaintiff in the amount of $2,878,191.41, including interest and taxable costs. Defendants filed a motion for a new trial or remittitur, which the trial court denied. Defendants now appeal.

On appeal, defendants first argue that the trial court erred by granting plaintiff's motion for a directed verdict on the issue of the decedent's comparative negligence. We agree. We review de novo a trial court's decision on a motion for a directed verdict. *Zantel Mktg Agency v Whitesell Corp*, 265 Mich App 559, 568; 696 NW2d 735 (2005). A directed verdict should be granted only when no factual issue exists on which reasonable jurors could differ. *Id*. We must view in a light most favorable to the nonmoving party all of the evidence presented up to the time the motion for a directed verdict was made and determine whether a question of fact existed. *Id*.

The elements of a prima facie case of negligence are: (1) a duty owed to the plaintiff by the defendant; (2) a breach of that duty; (3) causation; and (4) damages. *Laier v Kitchen*, 266 Mich App 482, 495; 702 NW2d 199 (2005). "An adult plaintiff has a duty to exercise reasonable care for his own safety and protection." *Id*. at 496. The doctrine of comparative negligence "distributes responsibility according to the proportionate fault of the parties," and requires that a plaintiff's damages be reduced by the same percentage of fault by which the plaintiff's conduct contributed to his injuries. *Id*. The question of comparative negligence is for the jury unless reasonable minds could not differ on the issue of the plaintiff's negligence. *Id.* Michigan has a statutory comparative negligence system for apportioning damages in cases alleging personal injury, property damage, or, like the instant case, wrongful death. See MCL 600.2957, MCL 600.2959, and MCL 600.6304.

Defendants argue that the trial court erred in granting plaintiff's motion for a directed verdict on the issue of the decedent's comparative negligence because an issue of fact existed regarding whether the decedent should have been able to perceive the feller buncher and take action to avoid it. We agree that the evidence presented created a question of fact regarding the visibility of the feller buncher, and, thus, the decedent's comparative negligence. Our review of the record revealed that while Timothy Fedak, Sharon Cole, and Daniel Beyersdorf all testified that they observed and avoided the feller buncher, their testimony also revealed that the feller buncher was not readily visible without additional lights or circumstances to alert drivers. However, Brian Lobdell, who testified for defendants, testified that he was driving behind plaintiff and was able to see the white lights on the feller buncher. While he could not see the feller buncher itself, he testified that he assumed that the lights were on a vehicle, but could not determine what kind of vehicle. Lobdell thought that the decedent would pass the vehicle in the road, but the decedent did not do so and the accident occurred. Lobdell still had to slam on his brakes to avoid hitting the feller buncher, but testified that he had observed the white lights on top of the machine and was alerted to the fact that a vehicle may be in the road. In addition, there was also evidence that the decedent was driving over the speed limit. In our opinion,

Lobdell's testimony and the decedent's excessive speed was sufficient to create a question of fact for the jury on the issue of the decedent's comparative negligence.[1]

Defendants also argue that the trial court abused its discretion by refusing to instruct the jury on the rear-end collision statute. We agree. We review de novo a claim of instructional error and review for an abuse of discretion a trial court's decision regarding whether a requested instruction is applicable. *Moore v Detroit Entertainment, LLC*, 279 Mich App 195, 223; 755 NW2d 686 (2008) (citation omitted).

The rear-end collision statute, MCL 257.402, provides:

> (a) In any action, in any court in this state when it is shown by competent evidence, that a vehicle travelling in a certain direction, overtook and struck the rear end of another vehicle proceeding in the same direction, or lawfully standing upon any highway within this state, the driver or operator of such first mentioned vehicle shall be deemed prima facie guilty of negligence. This section shall apply, in appropriate cases, to the owner of such first mentioned vehicle and to the employer of its driver or operator.

> (b) This section may not be invoked by the owner of any vehicle, the rear of which was struck under the circumstances above mentioned, if the accident occurred between 1 hour after sunset and 1 hour before sunrise, and the vehicle so struck did not, at the time, have a lighted lamp or lantern reasonably visible to the drivers of vehicles approaching from the rear.

MCL 257.402 creates a rebuttable presumption that the offending driver is "*prima facie* guilty of negligence." *White v Taylor Distrib Co, Inc*, 275 Mich App 615, 621; 739 NW2d 132 (2008). "A presumption of negligence may be rebutted with a showing of an adequate excuse or justification under the circumstances." *Id*. (internal quotation marks and citation omitted). "When the trial court undertakes to eliminate from the jury's consideration a statutory presumption as a matter of law, at the very least there must be clear, positive, and credible evidence opposing the presumption." *Id*. Otherwise, the evidence rebutting the presumption raises a question for the jury. *Lucas v Carson*, 38 Mich App 552, 557; 196 NW2d 819 (1972); see also *White*, 275 Mich App at 621-622.

The trial court ruled that MCL 257.402 did not apply, and thus an instruction need not be given, because the feller buncher was not lawfully standing on the road due to a lack of proper lights and reflectors. However, the feller buncher was not standing on the road. It was moving,

---

[1] We note that we disagree with defendants' assertion that the evidence presented raised a question of fact regarding whether the decedent was asleep. However, given our conclusion that a question of fact existed regarding the feller buncher's visibility, we do not discuss defendants' assertion further.

albeit very slowly. Thus, we agree with defendants that the trial court's reasoning was flawed. Further, pursuant to our discussion above, we agree with defendant that there was a question of fact whether the decedent was comparatively negligent, and that the jury should have been instructed in accordance with MCL 257.402. Accordingly, we hold that the trial court abused its discretion by declining to give the requested instruction. *Moore*, 279 Mich App at 223.[2]

Defendants next argue that the trial court abused its discretion by barring Paul Olson, defendants' proposed expert in the field of conspicuity perception and reaction time, from testifying regarding his field experiment regarding the visibility of the feller buncher. We disagree. We review for an abuse of discretion a trial court's decision to admit or bar expert testimony. *Gay v Select Specialty Hosp*, 295 Mich App 284, 290; 813 NW2d 354 (2012). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010).

At trial, defendants requested that Olson be allowed to testify as an expert witness. Olson testified that he worked as a consultant in the area of driver visual perception. Plaintiff's counsel voir dired Olson on the methodology that he used in this case. Olson stated that on a night in November 2011 he, defense counsel, and Weldon Greiger, an accident reconstructionist, parked the feller buncher on a dirt road and conducted a field experiment to determine the visibility of the feller buncher. Olson concluded that the feller buncher could be seen at a distance of 250 to 300 feet. Plaintiff objected to the admissibility of Olson's testimony on the ground that the methodology he used to measure the distance at which the feller buncher would be visible was dissimilar to the circumstances under which the accident occurred. The trial court agreed and disallowed Olson's testimony, finding that it was not a sufficient recreation of the circumstances under which the accident occurred. The court stated that the test was not based on reliable principles and that the methodology was flawed.

MRE 702 sets out the requirements for the admission of expert testimony, and provides:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

---

[2] We note that the statutory presumption of negligence created by MCL 257.402(a) can be rebutted by establishing the existence of a sudden emergency. *White v Taylor Distrib Co, Inc*, 482 Mich 136, 139; 753 NW2d 591 (2008). The sudden emergency doctrine applies if the evidence shows that a collision occurred as a result of a sudden emergency that was not of the driver's making. *Id*. at 139-140. The question whether a sudden emergency existed and whether the driver was negligent under the circumstances ordinarily are for the jury. *Id*. at 143. Based on the record, it appears that a jury instruction on the sudden emergency doctrine would also be appropriate.

In addition, MCL 600.2955 provides:

> (1) In an action for the death of a person or for injury to a person or property, a scientific opinion rendered by an otherwise qualified expert is not admissible unless the court determines that the opinion is reliable and will assist the trier of fact. In making that determination, the court shall examine the opinion and the basis for the opinion, which basis includes the facts, technique, methodology, and reasoning relied on by the expert, and shall consider all of the following factors:

> (a) Whether the opinion and its basis have been subjected to scientific testing and replication.

> (b) Whether the opinion and its basis have been subjected to peer review publication.

> (c) The existence and maintenance of generally accepted standards for governing the application and interpretation of a methodology or technique and whether the opinion and its basis are consistent with those standards.

> (d) The known or potential error rate of the opinion and its basis.

> (e) The degree to which the opinion and its basis are generally accepted within the relevant expert community. As used in this subdivision, "relevant expert community" means individuals who are knowledgeable in the field of study and are gainfully employed applying that knowledge on the free market.

> (f) Whether the basis for the opinion is reliable and whether experts in that field would rely on the same basis to reach the type of opinion being proffered.

> (g) Whether the opinion or methodology is relied upon by experts outside of the context of litigation.

The trial court found that the field experiment that Olson conducted was not based on sufficient facts and data pertinent to this case. Olson explained that he conducted his experiment in the middle of the night on a dirt road. The experiment took place at a different time and in different surroundings than those present when the accident occurred. The feller buncher involved in the accident was parked on the road, and did not move during the experiment. The white lights on the top of the machine were not activated, as they had been when the accident occurred. Defense counsel and Weldon Greiger got into a car and backed away from the stationary feller buncher until they reported to Olson that they could no longer see the machine.

The circumstances under which Olson's experiment were conducted differed significantly from those that existed at the time the accident occurred. The accident occurred just before dawn on a paved road rather than in the middle of the night on a dirt road. The feller buncher was not parked, but was moving, albeit very slowly, when the accident occurred. The white lights were on rather than off when the accident occurred. Significantly, the experiment involved two people in a vehicle backing *away* from the feller buncher, a machine they had

observed and knew was present as they backed away, whereas the decedent was driving toward the feller buncher, without advance knowledge of its presence, when the accident occurred. Olson estimated that the feller buncher was visible at a maximum of 250 to 300 feet, but he did not reach this conclusion by personal observation. He relied on the statements of defense counsel and Greiger to come to that conclusion. The trial court did not err in finding that Olson's experiment was not based on sufficient facts or data, and was not performed using reliable methods. See MRE 702; MCL 600.2955. Accordingly, the trial court did not abuse its discretion in excluding Olson's testimony. *Gay*, 295 Mich App at 290.

Defendants next argue that the trial court erred in ruling that the no-fault act, MCL 500.3101 *et seq.*, did not bar plaintiff's claims for economic damages. We disagree. The construction and application of a statute involves questions of law that we review de novo. *Klooster v City of Charlevoix,* 488 Mich 289, 295; 795 NW2d 578 (2011).

MCL 500.3101(1) provides, in pertinent part:

> The owner or registrant of a motor vehicle required to be registered in this state shall maintain security for payment of benefits under personal protection insurance, property protection insurance, and residual liability insurance.

MCL 500.3135 defines the extent of tort liability under the no-fault act, and subsection (3) provides partial immunity to the recovery of economic damages. Defendants discuss at length whether MCL 500.3135(3), if applicable, would permit plaintiff to recover economic damages. However, the crux of the issue is whether the no-fault act and, specifically, MCL 500.3135(3) apply. MCL 500.3135(3) provides, in pertinent part, that "tort liability arising from the ownership, maintenance, or use within this state of a motor vehicle with respect to which the security required by section 3101 *was in effect* is abolished except as to . . . ." MCL 500.3135(3) (emphasis added). We agree with the trial court's assessment that the plain language of the statute requires security as required by section 3101 *to be in effect*, which it was not in this case. Here, it is undisputed that defendants did not have no-fault insurance on the feller buncher; defendants acknowledged that the feller buncher was not covered by a no-fault insurance policy. Defendants seem to argue that the feller buncher was a motor vehicle, and, thus, was subject to security under the no-fault act. However, there was no policy in effect. The fact that the feller buncher may qualify as a motor vehicle is not dispositive of whether plaintiff's claims for economic damages are subject to the limitations of the no-fault act. Because the partial immunity from tort liability established by MCL 500.3135(3) applies only to a motor vehicle with respect to which the security required by MCL 500.3101 is in effect, and because the feller buncher was not covered by a no-fault policy, defendants were not entitled to the partial immunity established by MCL 500.3135(3).

Finally, defendants argue that they are entitled to a new trial or remittitur because the jury's award of $2,000,000 for past non-economic damages is grossly excessive. Given our decision to reverse and remand this matter, we do not address this issue.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction. Defendants, the prevailing parties, may tax costs pursuant to MCR 7.219.

/s/ Peter D. O'Connell
/s/ Karen M. Fort Hood
/s/ Michael F. Gadola