*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DEBORAH DEHAVEN,

Plaintiff-Appellee,

UNPUBLISHED
April 23, 2020

No. 344773
Lapeer Circuit Court
LC No. 2015-048611-NF

v

FARM BUREAU GENERAL INSURANCE
COMPANY,

Defendant-Appellant.

Before: GADOLA, P.J., and STEPHENS and SHAPIRO, JJ.

PER CURIAM.

Defendant, Farm Bureau General Insurance Company of Michigan, appeals as of right the order of the trial court entering a judgment of $120,641.75 in favor of plaintiff, Deborah DeHaven. We affirm.

## I. FACTS

On October 21, 2014, plaintiff was involved in an automobile accident. At that time, she was insured under a policy of no-fault insurance issued by defendant. After the accident, plaintiff applied to defendant for PIP benefits, asserting that as a result of the accident she had injuries to her legs, ankles, feet, back, arms, hands, elbow, neck, jaw, and chest. When defendant declined to pay plaintiff, she initiated this action seeking benefits under the policy, including reimbursement for replacement services.

Plaintiff also submitted to defendant Replacement Service Reimbursement Request forms seeking replacement services from the date of the accident. On the forms, plaintiff asserted that her husband, Dale DeHaven, provided household services for her beginning October 21, 2014,

-1-

including house cleaning, cooking, dishwashing, bed making, laundry, grocery shopping, driving, running errands, and caring for her horse. Both plaintiff and her husband signed the replacement services forms. Specifically with regard to June 3 and 4, 2015, plaintiff submitted a replacement service reimbursement request form asserting that on June 3, 2015, her husband provided six hours of services during which he performed horse care, driving, errands, and making beds/changing linens, and that on June 4, 2015, he provided four hours of services for those same tasks.

Defendant obtained surveillance video taken on June 3 and 4, 2015, in which plaintiff can be seen caring for her horse, driving, and running errands. Specifically, the surveillance footage shows plaintiff getting in and out of her car, driving, walking briskly across a parking lot into a department store, walking back to her car with a shopping bag, driving her husband who is wearing a bandage on his eye, going into a grocery store with her husband, driving to a horse stable, walking her horse in a pasture, petting the horse, and brushing the horse. Plaintiff appears to have no difficulty walking, driving, carrying a small bag, or walking the horse. She does appear to have some difficulty getting into her car. When she is with her horse, her actions are partially obscured by a fence but she can be seen bending and reaching. Defendant also obtained the affidavits of the two investigators with Mid-Michigan Investigative Services who video recorded plaintiff's activities; the affidavits state that the investigators observed plaintiff performing these activities unassisted and appeared free from pain or discomfort.

Defendant moved for summary disposition under MCR 2.116(C)(10), submitting to the trial court the video recordings and affidavits of the investigators. Defendant contended that the video and affidavits demonstrated that plaintiff and her husband falsely claimed that he provided replacement services on June 3 and 4, 2015, and that even if Dale DeHaven provided services on those dates, they were not reasonably necessary because the video and affidavits show that plaintiff had the ability to perform the services herself. Defendant argued that the false claims triggered the fraud provisions of the no-fault policy and thereby voided coverage under the policy.

In response to defendant's motion, plaintiff contended that she had never stated that she could not perform the activities that she was seen performing, but rather that she could only perform those activities to a limited extent, and that her husband had in fact performed the services claimed on the days in question. Plaintiff submitted affidavits and deposition testimony of both plaintiff and her husband, explaining that she is able to perform activities such as driving, walking, and shopping, but that the level of her ability varies from day to day depending upon how much pain she is experiencing. With respect specifically to June 4, 2015, plaintiff stated in her affidavit, in relevant part:

13. That my horse was scheduled for her annual physical/shots with the vet on June 4, 2015, between 12 and 2 pm.

14. That on the morning of June 4, 2015, I sent my husband to the horse barn to brush my horse and get her ready for her vet visit.

15. That because I own my horse, I am required to be present for the actual vet visit.

16. That I went to the barn, which is a short drive from my house, for the vet visit.

17. That I did not have to traverse muddy/uneven ground to walk my horse from the grass pasture to the vet exam area - it was all smooth/grassy surfaces.

18. That I go grocery shopping with my husband; I tend to use the shopping cart as a stabilizer.

19. That I am able to push the shopping cart so long as it is not too heavy or full.

The trial court denied defendant's motion for summary disposition determining that, viewing the evidence in the light most favorable to plaintiff, there was a genuine issue of material fact whether she misrepresented that her husband performed the services in question on June 3 and 4, 2015, and whether the services were reasonably necessary. The parties then tried plaintiff's claim before a jury. At the conclusion of trial, the jury found on behalf of plaintiff in the amount of $78,853.79, specifically finding that plaintiff did not "make false statements knowingly and with the intent to conceal or misrepresent material facts or circumstances in connection with the claim submitted" to defendant. The trial court entered the judgment on the jury verdict in favor of plaintiff, and thereafter denied defendant's motion for judgment notwithstanding the verdict (JNOV).

After a hearing on plaintiff's motion for case evaluation sanctions, the trial court entered its final judgment ordering case evaluation sanctions in the amount of $41,302.50, for a total judgment in favor of plaintiff in the amount of $120,641.75. Defendant now appeals the trial court's final judgment, challenging the trial court's orders denying defendant's motions for summary disposition and JNOV, and also challenging the amount of case evaluation sanctions awarded.

## II. DISCUSSION

## A. SUMMARY DISPOSITION

Defendant contends that the trial court erred by denying its motion for summary disposition. Defendant argues that the video recording and affidavits demonstrate that on June 3 and 4, 2015, plaintiff was able to, and in fact did, perform tasks that she represented to defendant she could not do and that she asserted were performed by her husband on those dates. Defendant argues that these misrepresentations triggered the fraud provisions of its policy, thereby voiding the coverage under the policy. We disagree.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Johnson v Vanderkooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). In doing so, we consider all documentary evidence submitted by the parties in the light most favorable to the nonmoving party. *Dawoud v State Farm Mut Auto Ins Co*, 317 Mich App 517, 520; 895 NW2d 188 (2016). Summary disposition under MCR 2.116(C)(10) is warranted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Bazzi v Sentinel Ins Co*, 502 Mich 390, 398; 919 NW2d 20 (2018). A genuine issue of material fact exists when, giving the benefit of reasonable doubt to the non-moving party, the record leaves open an issue on which reasonable minds could differ. *Allison v AEW Capital Mgt, LLP*, 481 Mich 419, 425; 751 NW2d 8 (2008). This Court also reviews de novo issues involving the proper interpretation of statutes and contracts. *Titan Ins Co v Hyten*, 491 Mich 547, 553; 817 NW2d 562 (2012).

Michigan's no-fault act provides broad coverage to persons injured in motor vehicle accidents, without regard to fault. *Cole v Auto-Owners Ins Co*, 272 Mich App 50, 55; 723 NW2d 922 (2006). Under the act, motor vehicle insurance policies are required to include coverage for a claimant's replacement services. MCL 500.3107(1)(c); *Hmeidan v State Farm Mut Auto Ins Co*, 326 Mich App 467, 479; 928 NW2d 258 (2018). Because PIP benefits are mandated by the no-fault act, "the statute is the 'rule book' for deciding the issues involved in questions regarding awarding those benefits." *Bazzi*, 502 Mich at 399. However, because an insurance policy is a contractual agreement between the insured and the insurer, *West American Ins Co v Meridian Mut Ins Co*, 230 Mich App 305, 310; 583 NW2d 548 (1998), automobile insurance contracts are also governed by the same principles of contract construction applicable to other contracts. *Bazzi*, 502 Mich at 399. As with other contracts, this Court's task is to determine what the agreement is and then to give effect to the intent of the parties. *Waldan Gen Contractors, Inc v Michigan Mut Ins Co*, 227 Mich App 683, 686; 577 NW2d 139 (1998).

A defendant's assertion that a contract is void or voidable is an affirmative defense. MCR 2.111(F)(3). Although generally whether an insured has committed fraud is a question of fact to be decided by the jury, this question may be decided by the trial court as a matter of law in the context of summary disposition. See *Meemic Ins Co v Fortson*, 324 Mich App 467, 473; 922 NW2d 154 (2018). To obtain summary disposition under MCR 2.116(C)(10) by relying upon a fraud exclusion clause in a policy of no-fault automobile insurance, the insurer must demonstrate that there is no question of material fact as to any of the elements of its affirmative defense. *Shelton v Auto-Owners Ins Co*, 318 Mich App 648, 657; 899 NW2d 744 (2017).

In this case, the automobile insurance policy that defendant issued to plaintiff includes a fraud provision as follows:

**Fraud or Concealment**

The entire policy will be void if, whether before or after a loss, you, any family member, or any Insured under this policy has:

1. Intentionally concealed or misrepresented any material fact or circumstance;

2. engaged in fraudulent conduct; or

3. made false statements;

relating to this Insurance or to a loss to which this Insurance applies.

This Court has enumerated the requirements for establishing fraud as follows:

To void a policy because the insured has wilfully misrepresented a material fact, an insurer must show that (1) the misrepresentation was material, (2) that it was false, (3) that the insured knew that it was false at the time it was made or that it was made recklessly, without any knowledge of its truth, and (4) that the insured made the material misrepresentation with the intention that the insurer would act upon it. A statement is material if it is reasonably relevant to the insurer's investigation of

the claim.  [*Bahri v IDS Prop Cas Ins Co*, 308 Mich App 420, 424-425; 864 NW2d 609 (2014) (citation omitted).]

Here, defendant moved for summary disposition under MCR 2.116(C)(10), supporting the motion with the affidavits of two investigators and the surveillance videos in which plaintiff appears to perform the same activities for which, on the dates in question, she stated that her husband provided replacement services.  A review of the surveillance video shows plaintiff getting in and out of her car, driving, walking briskly from a parking lot into a department store, walking back to her car with a shopping bag, driving her husband who is wearing a bandage on his eye, going into a grocery store with her husband, driving to a horse stable, walking her horse in a pasture, and petting and brushing the horse.  Plaintiff appears to have little or no difficulty performing these activities.

Defendant contended that the affidavits and the video demonstrated that plaintiff and her husband falsely claimed that he provided replacement services on June 3 and 4, 2015.  Defendant also contended that even if Dale DeHaven provided the services on those dates, the services were not reasonably necessary because the video and affidavits demonstrated that plaintiff had the ability to perform the services herself.  Plaintiff responded to the motion for summary disposition, contending that she had never stated that she could not perform the activities that she was seen performing, but rather that she could only perform those activities to a limited extent, and that her husband had in fact performed the services claimed on the days in question.

The trial court denied defendant's motion, determining that viewing the evidence in the light most favorable to the plaintiff, there was a genuine issue of material fact whether plaintiff had misrepresented whether her husband performed the services in question on June 3 and 4, 2015, and whether the services were reasonably necessary.  The trial court reasoned that although the video recording showed plaintiff performing the same activities for which she sought replacement services on the days in question, plaintiff provided an explanation for her activities depicted in the video that created a question of fact to be resolved by the jury.  The trial court further reasoned:

> . . . Plaintiff asserts that she never denied having some ability to perform these tasks with restrictions.  Plaintiff asserts that she can drive for short distances, run quick errands if there is not too much to carry.  As for brushing the horse, Miss DeHaven testified in her deposition that she, and I quote, "Can't like step and bend over and brush her like you're supposed to."  The affidavits further state that the services performed by Mr. DeHaven vary day to day as Miss DeHaven's ability to perform them on her own varies.  These affidavits do not contradict prior deposition testimony as the Court is not aware of any testimony to the effect that Miss DeHaven was completely incapable of performing any part of those activities in question.

> The Court finds that genuine issues of material fact as to the necessity and/or degree of reasonableness remain.  This is not a case where irrefutable evidence makes assertions to the contrary impossible such as where a claim for services is made before the date of the accident, or where the allegedly injured party and her service provider were separated by an ocean.  Here, a reasonable person viewing the evidence in the light most favorable to the Plaintiff could find that Miss DeHaven's

abilities were limited such that the replacement services in question were reasonable and necessary. Again, it is for the finder of fact to weigh the video evidence against the testimony of the DeHavens.

On appeal, defendant contends that the trial court erred and relies primarily on this Court's decision in *Bahri*. In that case, the plaintiff sought PIP benefits under a policy of automobile insurance issued by the defendant insurer, including reimbursement for household replacement services. However, during the time for which she sought the replacement services she was video recorded bending, lifting, driving, and running errands. This Court held that video evidence showing the plaintiff in that case "bending, lifting, carrying objects, running errands, and driving – on the dates when she specifically claimed she needed help with such tasks" demonstrated that the plaintiff did not require replacement services and that "[r]easonable minds could not differ in light of this clear evidence that plaintiff made fraudulent representations for purposes of recovering PIP benefits." *Id*. at 425-426. This Court determined that in that case, the plaintiff's fraudulent statements triggered the fraud exclusion in the no-fault policy, thereby precluding coverage. *Id*. at 423-426.

More recently, this Court in *Shelton*[1] affirmed the decision of the trial court that the defendant insurer was not entitled to summary disposition of the plaintiff's claim for medical expenses despite video evidence showing the plaintiff performing activities that the claim suggested were not possible for her to perform. In *Shelton*, the defendant insurer contended that because it had obtained video evidence of the plaintiff doing activities that she claimed she could not do, there was no genuine issue of fact and the defendant was entitled to summary disposition. This Court in *Shelton* disagreed and distinguished *Bahri* in part, stating that in *Bahri*:

> [O]ver a period of approximately seven weeks, the plaintiff repeatedly engaged in a wide range of chores during the days on which she claimed that someone else did them for her. . . . While such repeated activities are sufficient to establish the elements of fraud beyond a question of fact, a single episode of wringing out a shirt does not, nor do isolated examples of an injured person participating in simple physical actions such as bending, modest lifting, or other basic physical movements that the person asserts are painful or difficult. These types of inconsistencies in a claimant's statement are not sufficient to establish any of the elements of fraud beyond a question of fact. [*Shelton*, 318 Mich App at 660.]

To summarize, in this case we review de novo whether the record supports the trial court's denial of defendant's motion for summary disposition, which was based on the ground that plaintiff engaged in fraud or misrepresentation to obtain PIP benefits, and thereby had triggered the fraud provision of the contract, consequently voiding the contract. To establish the contract defense of

---

[1] *Shelton* differs factually from this case. The plaintiff in *Shelton* was not the policyholder and the fraud provisions of the no-fault policy were not at issue. In addition, the plaintiff in *Shelton* did not challenge on appeal the dismissal of her claim for replacement services. *Shelton* is relevant, however, to the inquiry whether a genuine issue of material fact remains after the defendant insurer produces video evidence showing the claimant performing activities that the claim suggests are not possible for the claimant to perform.

fraud, defendant was required to show that plaintiff knowingly or recklessly made a material misrepresentation of a fact that she knew was false when she made it, and did so intending that defendant act upon it. *Bahri*, 308 Mich App at 424-425. "A statement is material if it is reasonably relevant to the insurer's investigation of a claim." *Id*. at 425. We consider specifically in this case whether the video evidence and affidavits demonstrated that there was no question of fact remaining that plaintiff made material misrepresentations of a fact or facts that she knew were false when she made them, and did so intending that defendant act upon them, regarding her need for and receipt of replacement services on June 3 and 4, 2015.

We conclude that the trial court's denial of defendant's motion for summary disposition is supported by the record. Although the surveillance video shows plaintiff driving, walking, shopping, and caring for her horse on June 3 and 4, 2015, the video does not establish that the form requesting replacement services necessarily contained a false statement. Again, a genuine issue of material fact exists when, giving the benefit of reasonable doubt to the non-moving party, the record leaves open an issue on which reasonable minds could differ. *Allison*, 481 Mich at 425. Here, plaintiff's explanation regarding the video evidence is not contradictory to her statements made in requesting replacement services reimbursement. Her position is that she never said she was entirely incapable of driving, walking, or running errands, only that she often needs help to do these activities. She argues that her abilities vary from day to day, and that she is attempting to improve her condition by doing tasks to the extent that she can.

Defendant argues that the video shows plaintiff driving her husband, whose eye is bandaged, on June 4, 2015, when she claimed that on that same day he drove for her and did four hours of replacement services for her, including horse care. Plaintiff, however, explained that on that day her husband performed the services for her and then, because he had injured his eye earlier, decided that he needed to go to the eye doctor. She then went to the stable to meet the vet. Giving the benefit of reasonable doubt to plaintiff, the record leaves open an issue on which reasonable minds could differ, being whether plaintiff misrepresented her need for and receipt of replacement services on June 3 and 4, 2015. And in fact, the jury verdict specifically finding that neither plaintiff nor her husband knowingly made false statements to defendant with the intent to conceal or misrepresent material facts or circumstances in connection with the claim, supports the conclusion that reasonable minds could (and, in fact, did) reach this conclusion. The trial court therefore did not err in denying defendant's motion for summary disposition.

## B. JNOV

Defendant next contends that the trial court erred by denying its motion for JNOV because the jury's conclusion was not reasonable in light of the evidence. We disagree.

We review de novo a trial court's decision to grant or deny a motion for judgment notwithstanding the verdict. *Hecht v Nat'l Heritage Academies, Inc*, 499 Mich 586, 604; 886 NW2d 135 (2016). In doing so, we view the evidence, and all legitimate inferences arising from the evidence, in a light most favorable to the nonmoving party. *Id*. If, upon viewing the evidence in the light most favorable to the nonmoving party, reasonable jurors could honestly reach different conclusions, the jury verdict must stand. *Heaton v Benton Constr Co*, 286 Mich App 528, 532; 780 NW2d 618 (2009). In addition, the determination of the credibility of witnesses and the weight

to be given to testimony is generally left to the jury. *Dawe v Bar-Levav & Assoc, PC (On Remand)*, 289 Mich App 380, 401; 808 NW2d 240 (2010).

In this case, defendant argues that the video evidence introduced at trial demonstrated that both plaintiff and her husband misrepresented her need for replacement services and also misrepresented that he provided those services on June 3 and 4, 2015. Defendant argues that, for example, the video of June 4, 2015, showing plaintiff caring for the horse demonstrates that her representations in April 2015 that she lacked hand strength to open a water bottle, brush her teeth, or use a hair dryer were misrepresentations. Defendant also contends that plaintiff's explanation for how her husband was able to perform the replacement services on June 4, 2015, lacked credibility, and that the timeline suggested by plaintiff is not supportable by the record.

However, viewing the evidence in the light most favorable to plaintiff, reasonable jurors could reach different conclusions about whether plaintiff or her husband made material misrepresentations of fact to defendant about her need for replacement services or the fact that those services were performed on June 3 and 4, 2015. For the same reasons articulated by the trial court in denying the motion for summary disposition, a jury could conclude from the evidence that plaintiff never asserted that she was completely unable to drive, walk, run errands, or do small tasks relating to her horse. The jury also could have concluded based upon the testimony of plaintiff and Dale DeHaven, that he performed chores on June 4, 2015 related to the horse and then plaintiff later went to the stable to meet the vet. Furthermore, plaintiff's description of her limitations in April of 2015 has limited relevance to her abilities in June of 2015. Because the record, when viewed in the light most favorable to the plaintiff, contains some evidence from which the jury could have reached its conclusion, the trial court did not err in denying defendant's motion for JNOV.

## C. CASE EVALUATION SANCTIONS

Defendant also contends that the trial court improperly assessed case evaluation sanctions against it by including services allegedly performed by a paralegal and a law clerk employed by plaintiff's counsel when no evidence was presented to establish the reasonable hourly rates for those positions. Again, we disagree.

In a civil action a trial court may submit the case to evaluation, and if a party rejects an evaluation, that party is subject to sanctions if the party fails to improve their position at trial. *Elia v Hazen*, 242 Mich App 374, 378; 619 NW2d 1 (2000). The purpose of case evaluation sanctions is to shift the financial burden of trial onto the party who demanded trial by rejecting the case evaluation. *Allard v State Farm Ins Co*, 271 Mich App 394, 398; 722 NW2d 268 (2006). Case evaluation sanctions include the award of attorney fees, including the fees related to a legal assistant. MCR 2.403(O)(1), (6). We review de novo a trial court's decision to grant or deny case evaluation sanctions, *Smith v Khouri*, 481 Mich 519, 526; 751 NW2d 472 (2008), and the amount of case evaluation sanctions awarded is reviewed for an abuse of discretion. *Peterson v Fertel*, 283 Mich App 232, 239; 770 NW2d 47 (2009). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes. *Smith*, 481 Mich at 526.

In this case, defendant does not dispute that the case evaluation sanctions may include an award for services provided by a legal assistant, nor that the paralegal and law clerk in question

meet the definition of legal assistant. Rather, defendant contends that the amounts awarded for the services of plaintiff's counsel's law clerk and paralegal were imposed erroneously because "no evidence was admitted to establish the prevailing market rates for work performed by those individuals."

In *Smith*, our Supreme Court stated the framework for determining a reasonable attorney fee:

> In determining a reasonable attorney fee, a trial court should first determine the fee customarily charged in the locality for similar legal services. In general, the court shall make this determination using reliable surveys or other credible evidence. Then, the court should multiply that amount by the reasonable number of hours expended in the case. The court may consider making adjustments up or down to this base number in light of the other factors listed in *Wood [v Detroit Auto Inter-Ins Exch*, 413 Mich 573; 321 NW2d 653 (1982)] and MRPC 1.5(a). [*Smith*, 481 Mich at 537]

The party requesting the fees has the burden of proving the reasonableness of the fees requested. *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 281 n 45; 884 NW2d 257 (2016). With respect to what is a reasonable hourly rate, the party requesting fees must present testimony or empirical data to establish the customary fee for the locality. *Smith*, 481 Mich at 531-532. After calculating a baseline figure, the trial court must consider and briefly discuss on the record the remaining *Wood* factors and the factors in MRPC 1.5(a) to determine appropriate adjustments to the base number. *Pirgu*, 499 Mich at 275-276.

In this case, the trial court held, in relevant part regarding the attorneys and legal assistants working for plaintiff's counsel:

> The Court is going to rely upon *Wood v Daiie*, 413 Mich 573 and *Smith v Khouri*, 481 Mich 519. Again, there is no magic formula how to come up with these things, but there's various situations the Court looks at: the professional standing and experience of the attorney. . . .

> * * *

> The expenses incurred I think were reasonable. And the nature and length of the professional relationship with the client, clearly, Mr. Toth has represented Miss DeHaven over a long series of cases. So the Court is satisfied [with] 137.9 hours, $250 an hour.

> The Court does have difficulty with Miss Driscoll. She did indicate she was quite successful at law school. She was assistant editor of the Law Review. The Court congratulates her on that. She has moved on and is working for a prosecuting attorneys' office, so the Court has no problem with her billing at $150 an hour, and the Court does have that she's at 17.1 hours. The Court will reduce her rate to ten hours at $150 an hour in regard to that matter.

-9-

In regard to Mr. Cochrane. Clearly, Mr. Cochrane had gone through law school, titled as a paralegal or research individual within the office. The Court is satisfied he did graduate from Western Michigan, eventually did pass the Bar, but while he was doing a lot of this work he was still a law school type individual. And, again, the rate of him being at $100 an hour at Mr. Toth's office, and that 23 hours are adequate in regard to that.

Coming to Miss Herman. Clearly, she's a paralegal, has 30 years of experience as a paralegal, only worked for [] Mr. Toth for approximately two years in regard to this matter. Prior to working with Mr. Toth, she indicated that when she worked for other attorneys they would bill her rate at $125 an hour. There are no real empirical studies that the Court is satisfied [with] to be admitted to the Court in regard to what she should bill per hour. But having said all that, the Court will indicate that her time clearly should be 40.7. The court is confident she kept adequate hours based upon experience and knowledge, but the court will reduce her rate from $90 an hour to $75 an hour based on 40.7 hours.

The trial court indicated that no empirical data existed to support the rate established for plaintiff's counsel's law clerk and paralegal, and therefore the trial court determined the hourly rates for the law clerk and the paralegal by first determining the appropriate hourly rate for the attorneys, then considering the rates requested for the paralegal and law clerk in light of the training and experience of those individuals. The trial court considered the hourly rate for the paralegal at her previous firm ($125) and her hourly rate at plaintiff's counsel's firm ($90), then reduced that amount to $75. The trial court considered that the law clerk in this case was in fact an attorney who had graduated from law school and passed the bar, but was not yet licensed at the time he performed much of the work in this case, then determined that $100 was a reasonable hourly rate. Comparing the hourly rate charged for lead counsel ($250) and for the less-experienced attorney assisting lead counsel ($150), it cannot be said that the trial court's decision to establish the law clerk's hourly rate of $100 was an abuse of discretion, nor unsupported by data. See, e.g., *Heaton*, 286 Mich App at 542-543 (suggesting that because the reasonable hourly rate for the attorney was properly calculated in the context of case evaluation sanctions, the comparably reduced hourly rate for reasonable paralegal services was also properly calculated). We therefore conclude that the trial court did not abuse its discretion in determining the amounts awarded in case evaluation sanctions for the services of the paralegal and law clerk in this case.

Affirmed.

/s/ Michael F. Gadola
/s/ Cynthia Diane Stephens
/s/ Douglas B. Shapiro